Bret Marvin **HARRIS**, Deceased, By and through his natural parents and next of kin, Jim **HARRIS** and Jean Harris, Plaintiff/Appellee,

v.

Gary **MAYNARD**, Warden of Oklahoma State Prison at McAlester; Larry Meachum, The acting Director and Chief Executive Officer of the Oklahoma Department of Corrections of the State of Oklahoma, and Three Unnamed Correctional Officers of the Oklahoma Department of Corrections; and John Grider, Asst. Dir. Oklahoma Department of Corrections, Defendants/Appellants.

No. 87–2009.

United States Court of Appeals, Tenth Circuit.

March 30, 1988.

Robert A. Nance, Asst. Atty. Gen., Deputy Chief, Federal Div. (Robert H. Henry, Atty. Gen. of Okl., with him on the briefs), Oklahoma City, Okl., for defendants/appellants.

Howard Douglas Perkins, Jr., Tulsa, Okl., for plaintiff/appellee.

Before ANDERSON and TACHA, Circuit Judges, and BRATTON,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

The three named defendants in this case, Gary Maynard, Larry Meachum, and John Grider—all Oklahoma corrections officials, moved for summary judgment and protection from discovery on the basis of the pleadings and supporting affidavits. The District Court denied both motions and the defendants appeal, as permitted by *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). They invoke qualified immunity from liability under 42 U.S.C. § 1983 for the deceased plaintiff's unexplained and violent murder while an inmate in the McAlester, Oklahoma prison facility, citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411. The defendants contend that they are entitled to immunity because they violated no Eighth or Fourteenth Amendment rights of the plaintiff that were "clearly established" and "of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Moreover, they insist that they had no personal participation in any events that might have been associated with the risk of undue harm to which the prisoner Harris was subjected. Invoking the summary judgment rules contained in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), they contend that, taking all of the facts alleged in plaintiff's affidavits as true, the allegations could not survive a motion for summary judgment. We disagree and affirm the district court rulings.

As a threshold matter of law, we must first decide whether the prisoner could have suffered, at the hands of corrections officials, any deprivation of his constitutional rights under the due process clause of the Fourteenth Amendment and the cruel and unusual punishments clause of the Eighth Amendment. The most relevant and recent Supreme Court cases are *Daniels*, 474 U.S. 327, 106 S.Ct. 662, *Davidson*, 474 U.S. 344, 106 S.Ct. 668, and *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Together, *Daniels* and *Davidson* establish that under the due process clause of the Fourteenth Amendment no constitutional deprivation occurs as a result of the negligent acts of prison officials; i.e., mere negligence does not constitute a deprivation in the constitutional sense. *Daniels* 474 U.S. at 330–36, 106 S.Ct. at 664–67; *Davidson* 474 U.S. at 348, 106 S.Ct. at 670–71. Neither the Supreme Court nor this court, however, has decided whether, under the Fourteenth Amendment, a deprivation of due process occurs when a prisoner's death at the hands of other inmates can be laid to official misconduct that is grossly negligent or reckless.

■ The recent Eighth Amendment case of *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251, is relevant to the question of the extent of the prisoner's due process right to life under the Fourteenth Amendment. *Whitley* noted that the substantive rights of a prisoner to be free from excessive and unjustified use of force were best addressed under the Eighth Amendment, stating that "[i]t is obduracy and wantonness ... that charac-

---

* Hon. Howard C. Bratton, Sr. Judge, U.S. District Court for the District of New Mexico, sitting by designation.

terize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, ... or restoring official control...." [1] *Whitley* at 319, 106 S.Ct. at 1084. *Whitley* held that, in the context of prison rioting, the Fourteenth Amendment's right of substantive due process affords no more protection to convicted prisoners than does the Eighth Amendment. Although declining to imply that its ruling suggested the outcome of the standard-of-care question reserved in *Daniels* and *Davidson,* the logic of the case suggests that the Fourteenth Amendment provides no less protection, at least where life is involved. Where one's very right to life is at stake, and where prison officials control the conditions of confinement, thereby reducing the prisoner's ability to protect himself, it takes no great acumen to determine that, constitutionally, prison officials may not exercise their responsibility with wanton or obdurate disregard for or deliberate indifference to the preservation of the life in their care.[2] In any event, a fortiori, prison officials are not immune under the Eighth Amendment from suit for wrongful conduct that is intentional. The same is true under the Fourteenth Amendment due process clause. *See, e.g., Daniels,* 474 U.S. at 334, n. 3, 106 S.Ct. at 667, n. 3 (in reserving the question of "whether something less than intentional conduct, such as recklessness or 'gross negligence' is enough to trigger the protections of the Due Process clause," the Court acknowledges that intentional conduct does trigger the protections). We conclude that wanton or obdurate disregard of or deliberate indifference to the prisoner's right to life as a condition of confinement is a substantive constitutional deprivation whether it falls under the due process clause or the Eighth Amendment.[3]

Even concluding that a convicted prisoner has a constitutional right to be free from wanton and obdurate misconduct of corrections officials that proximately causes the prisoner's death, we must determine if this right was "clearly established" at the time of the alleged misconduct and if a reasonable corrections official would have known of it. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Defendants ask us to rule that there was no clearly established law on this point at the time of prisoner's death in September 1985 and that, therefore, they could not be liable for constitutional violations for gross negligence or recklessness. Defendants, however, overlook the fact that under Eighth Amendment standards, which were clearly established, prison officials are not immune from suit for the wanton and unnecessary infliction of pain. *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). At this point we cannot say that the circumstances surrounding Harris' stabbing and strangulation death did not fall within the realm of violations of the cruel and unusual punishment clause as defined under the line of then existing Eighth Amendment cases.[4] And the prohi-

1. *Whitley* found that a prison guard did not impose cruel and unusual punishment in shooting the prisoner during the course of putting down a prison riot, because in the context of prison rioting, the wantonness and obduracy standard requires the malicious and sadistic use of force to cause harm.

2. We note that commentators are taking a comparable view. *See, e.g.,* L. Tribe, American Constitutional Law, 665, n. 10, (2d Ed.1988).

3. We note that the Supreme Court has granted certiorari in a 7th Circuit case which ruled that the Winnebago County Department of Social Services had not deprived Joshua DeShaney of his constitutional right to bodily integrity under the due process clause by the Department's reckless failure to protect Joshua from severe brain damage inflicted by the boy's father. *DeShaney v. Winnebago Cty. Dept. of Soc. Services,* 812 F.2d 298 (7th Cir.1987), *cert. granted,* — U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988). In declining to find any "special relationship" between a child at risk of abuse and a state agency that is aware of the risk, DeShaney differentiated the role of prison officials from that of welfare officials: "a 'special relationship' between a prison and its inmates ... imposes on the prison a constitutional duty (although a severely limited one) to protect an inmate from the violence of his fellow inmates, ...." *DeShaney* at 303–4.

4. *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984) (prison administrators are charged with the "obligation to take reasonable measures to guarantee the safety of the inmates themselves"); *Smith v.*

bition against the wanton and unnecessary infliction of pain should just as well protect against a painful death as against a painful injury short of death. The pleadings and affidavits, taken as a whole, fairly raise the possibility of a violation of a clearly established right under the Eighth Amendment.

■ The defendants also urge that there is no showing of any personal misconduct by them and that without personal participation or an affirmative showing of a link between the alleged constitutional deprivation and their conduct they cannot be liable for constitutional violations, even if they exist. They also contend that the evidence, viewed in the light most favorable to the plaintiffs, is not sufficient to survive the preponderance of the evidence standard that would be used at trial. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At this stage of the proceedings, in reviewing the denial of a motion for summary judgment, we view the pleadings and supporting affidavits in the light most favorable to the nonmoving party. When so viewed, the record to date shows that (1) the deceased plaintiff's mother made a number of phone calls to the offices of Prison Director Gary Maynard and Corrections Department Director Larry Meachum, informing those offices of her son's need for protection from other inmates; (2) the mother spoke on the phone with Associate Corrections Department Director John Grider, conveying the same information; (3) a "separtee order" had been issued, ordering the separation of Harris from fellow inmate Stout; (4) the order was not enforced when Stout was placed six cells away from Harris in the same maximum security "quad unit" at the prison, (5) Harris' death by stabbing and strangulation occurred approximately six weeks after Stout's transfer; (6) Harris' mother has been denied access to Harris' personal effects, including threatening letters from Stout, evidence of her son's payment of "protection" money to other inmates, and her letters regarding efforts to secure protective custody for her son.

Discovery bearing on major questions has been steadfastly refused: questions bearing directly on the presence or absence of the personal involvement of the defendants in Stout's transfer; on the role and identity of three other, unnamed defendants; and on the actual conduct of all defendants or those under their direct supervision. In turn, evidence of conduct will provide the objectively determinable measures of the defendant's states of mind. How did Stout's transfer come about? Who made the decision? What was the direct chain of knowing official involvement? Did those involved in the move know of the separtee order? Did they know of the hostility between Stout and Harris, of the messages from Harris' mother, of any request for protection from Harris himself? Was there a waiver of protective custody, as alleged by defendants and strenuously denied by plaintiffs—a denial supported by a document examiner's report. In short, was Harris placed in mortal danger in violation of Eighth Amendment standards?

These and similar questions are relevant, notwithstanding the lack of evidence at this point as to who killed Harris or instigated the killing. The pleadings and supporting affidavits filed by Harris' next of kin on his behalf fairly raise the connection and allege sufficient facts and legal theories to meet even the heightened pleading require-

---

*Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (punitive damages may be assessed in a § 1983 suit for prison guards' misconduct involving callous or reckless indifference to prisoner's safety; prisoner suffered sexual assault and injury at the hands of fellow inmates); *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (upholding lower courts' measures to remedy conditions of prison confinement that constituted cruel and unusual punishment under Eighth Amendment); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("deliberate indifference" to prisoner's serious medical needs is required for infliction of wanton and unnecessary pain in violation of cruel and unusual punishments clause). Although the exact prison practice alleged in the case before us was not addressed by the cases cited in this footnote, we agree with the 7th Circuit that a precisely analogous case is not required to pierce an officer's immunity where the unlawfulness is apparent in light of the pre-existing law. *See Walsh v. Mellas,* 837 F.2d 789, 801 (7th Cir.1988).

ments of *Elliott v. Perez*, 751 F.2d 1472 (5th Cir.1985).[5]

The unique facts alleged and the supporting affidavits in this case warrant denial of the motions for summary judgment and protection from discovery. Just as the pleadings and supporting affidavits were helpful in determining whether to allow the plaintiff's claim to proceed to the discovery stage, discovery should be helpful in determining whether the allegations of gross negligence and more could survive the "crucible of ... trial." *Garcia v. Miera*, 817 F.2d 650, 658 (10th Cir.1987). Whether the allegations can withstand the crucible of discovery itself must await that discovery; in any event, the allegations of official misconduct are sufficiently serious and supported in the record to allow discovery to proceed. If during the discovery process, it becomes clear that no constitutional deprivation can be established by the evidence, a motion for summary judgment can be entertained again.

AFFIRMED.

**5.** The 5th Circuit in *Elliott* vacated summary judgements for the defendants and remanded for more specific pleadings, declining on the basis of loose allegations in the complaint to "undertake the 'iffy' task" of determining whether the defendants were entitled to immunity. *Elliott* at 1482. Here, we have far more specific allegations, not to mention an acknowledgement from prison officials that a separatee order had been issued, an affidavit of Mrs. Harris that she had communicated her son's need for protective custody on a number of occasions, and a document examiner's opinion that a signature on a waiver of protective custody form was not that of the author of four letters purported to be written by the deceased plaintiff.