Ruth Ann BRYSON, individually and as administratrix of the estate of Patty Husband; Gary Chambers, individually and as administrator of the estate of Patty Chambers and as guardian and next friend of Tricia Chambers; Janet Esser, individually and as administratrix of the estate of Richard Esser and as guardian and next friend of Richard Esser, III and Shannon Esser; Lisa Hamilton, individually and as representative of the estate of Patricia Gabbard; Kim Baker, individually and as representative of the estate of Patricia Gabbard; Judith Morey, individually and as administratrix of the estate of Kenneth Morey; Robert Morey, individually; Carla Phillips, individually and as executrix of the estate of Leroy O. Phillips and as guardian and next friend for Craig Arthur Phillips and Christopher Lee Phillips; Dorothy Pyle, individually and as executrix and personal representative of the estate of Jerry Pyle; Lynda Rockne, individually and as administratrix of the estate of Paul Rockne and as guardian and next friend of Damien Rockne; Gene Bray; Lois Bray; Ron Blackwell; William Nimmo; Tracy Sanchez; Steven Vick; and Judy Walker, Plaintiffs–Appellants,

v.

CITY OF EDMOND, a municipal corporation; Clent Dedek, individually and in his official capacity as Chief of Police of the City of Edmond; John Doe, individually; William Savage, individually; and Dale Fowlkes, individually, Defendants–Appellees.

No. 89–6100.

United States Court of Appeals, Tenth Circuit.

June 12, 1990.

Steven M. Angel, Oklahoma City, Okl., for plaintiffs-appellants.

Robert J. Turner and Richard J. Goralewicz, of Turner, Turner & Braun (Kenneth W. Turner, with them on the brief), Oklahoma City, Okl., for defendants-appellees City of Edmond and Clent Dedek.

Wm. Lee Borden, Jr., Asst. U.S. Atty. (Robert E. Mydans, U.S. Atty., and John E. Green, First Asst. U.S. Atty., with him on the brief), Oklahoma City, Okl., for defendants-appellees Dale Fowlkes and William Savage.

Before ANDERSON and EBEL, Circuit Judges, and CHRISTENSEN *, Senior District Judge.

CHRISTENSEN, Senior District Judge.

In this civil rights action, the plaintiffs-appellants have appealed from orders of the district court granting the defendants' motions to dismiss the complaint for failure to state claims on which relief can be granted and dismissing the action.

The plaintiffs or their decedents were injured or killed on August 20, 1986, when shot by a deranged fellow post office employee, Henry Patrick Sherrill, inside the Edmond, Oklahoma, post office. The Edmond city police arrived at the scene within

* Honorable A. Sherman Christensen, Senior United States District Judge for the District of Utah, sitting by designation.

minutes of the outset of the shooting but classified the massacre as a hostage situation and did not attempt to enter the building for more than an hour and a half.

## I.

## STATEMENT OF THE CASE

Plaintiffs brought the action against the city of Edmond, its police chief Clent Dedek, the postmaster Dale Fowlkes, and two officers of the Oklahoma Air National Guard, William Savage and an otherwise unidentified and unserved John Doe from whom Sherrill allegedly obtained his weapons. The plaintiffs alleged they were deprived of substantive due process and associational rights in violation of the Fifth and Fourteenth Amendments. The claim against the city, the police chief and the guardsmen was designated as a 42 U.S.C. § 1983 action and the claim against the postmaster a *Bivens* action.[1] In addition, a pendent wrongful death claim was asserted, which was dismissed by the district court without prejudice when the federal claims failed.

1. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The plaintiffs argue that their claim against the guardsmen was brought under *Bivens* as well as § 1983.

2. The plaintiffs also alleged they were deprived of property interests, but they did not pursue that contention in the district court or on appeal.

3. As to the city and police chief Dedek: instructing officers not to extend help to the persons within the post office; instructing them not to enter the post office, although they were notified of safe access through the postal inspector's entrance and that Sherrill was shooting individuals; failing to instruct officers to extend assistance to the individuals inside; maintaining a S.W.A.T. team and police department which were inadequately trained and unable to extend assistance to individuals in the post office; failing to train its employees on how to handle such an emergency situation; failing to implement any procedures on how to handle such a situation; classifying this as a hostage situation and, as a result, failing to attempt any rescue of those inside for over an hour and a half during which time the individuals inside were continuing to suffer extreme pain and suffering. R.Vol. I, Tab 1 at 6–7.

The district court held that plaintiffs failed to state a section 1983 claim because no liberty interest[2] was implicated and the plaintiffs did not allege the requisite intent or level of conduct for a constitutional violation. The plaintiffs were afforded opportunity to amend but elected not to do so, and all their claims were dismissed.

On appeal, the plaintiffs insist they did state cognizable section 1983 and *Bivens* claims. Specifically they argue that a substantive due process claim was stated against the city and its police officers and a claim for deprivation of associational rights was stated against the postmaster and the guardsmen.

The factual allegations concerning the conduct of the defendants, eliminating redundancies, are set out in the margin.[3]

The allegations of the complaint concerning the state of mind or intent of all the defendants while engaging in such conduct employed essentially these terms: that they "acted intentionally, wilfully and with wanton disregard for plaintiffs' rights and/or through gross negligence." *See* R.Vol. I, Tab 1, ¶ 25 at 6; ¶ 31 at 12; ¶ 31 at 13; ¶ 36 at 19. Concerning the conduct

As to national guardsman Savage: failing to conduct minimal psychiatric examination of individuals having access to deadly weapons and ammunition and failing to assure the mental stability of those to whom weapons were assigned. *Id.* at 12–13. (There were other charges directed particularly against the defendant Doe which are immaterial for the purposes of this appeal.)

As to postmaster Fowlkes: with notice that the post office did not meet minimum safety requirements, failing to correct the problem; knowing of Sherrill's instability, failing to fulfill his duty by requiring evaluation and medical assistance and examinations; authorizing Sherrill to be placed under increased pressure in hopes of forcing him to resign; and "by these acts and conduct" intentionally, wilfully and with wanton disregard for plaintiffs' rights and/or through gross negligence, violating plaintiffs' rights, individually and as to those they represent, directly and proximately causing plaintiffs' loss of association and companionship. "Specifically, defendant knew, or should have known, that by the actions set forth above, death was likely to occur, and the plaintiffs, and those they represent, would be denied the companionship and association of the decedent." *Id.* at 19–20.

of the guardsmen and the postmaster particularly, the complaint added that by "their acts and conduct defendants intentionally, or with conscious disregard for plaintiffs' rights, deprived plaintiffs and those whom they represent [of] associational rights." *Id.* ¶ 33 at 14; ¶ 36 at 19.

The Honorable Ralph G. Thompson, Chief Judge of the United States District Court for the Western District of Oklahoma, dealt with the defendants' motions to dismiss the complaint in two orders. In the first, concerning the situations of the city and police chief Dedek (the "city defendants"), he characterized plaintiffs' claims as essentially premised upon an alleged failure to successfully rescue the victims of a third party. He distinguished cases of shooting by police relied upon by plaintiffs such as *Grandstaff v. City of Borger, Texas*, 767 F.2d 161 (5th Cir.1985), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), and *Thompson v. Spikes*, 663 F.Supp. 627 (S.D.Ga.1987), and observed that *Taylor v. Watters*, 655 F.Supp. 801 (E.D.Mich.1987), *Jackson v. City of Joliet*, 715 F.2d 1200 (7th Cir.1983), *cert. denied*, 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984), and *Escamilla v. City of Santa Ana*, 796 F.2d 266 (9th Cir. 1986), denying recoveries, were more analogous. And he determinatively applied

against the city defendants a negligence analysis, relying upon *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and citing *Watson v. City of Kansas City, Kan.*, 857 F.2d 690 (10th Cir. 1988), *Ellsworth v. City of Racine*, 774 F.2d 182 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986), and *Jackson v. Byrne*, 738 F.2d 1443, 1446 (7th Cir.1984).[4]

In the second order, the district court dismissed the *Bivens* claim against postmaster Fowlkes and the section 1983 claim against the guardsman Savage, relying upon *Trujillo v. Board of County Comm'rs*, 768 F.2d 1186 (10th Cir.1985).[5]

Because of the dismissal of the federal law claims and the election of plaintiffs not to amend within the time allowed, the court concluded that it should not exercise pendent jurisdiction over the state law claims, and they were dismissed without prejudice. Final judgment was entered February 16, 1989, and plaintiffs timely appealed.

## II.

## ISSUES ON APPEAL

The issues of this appeal as framed in plaintiffs' brief are:

---

**4.** The district court reasoned:
Plaintiffs attempted to circumvent the Supreme Court's decision in *Daniels* that "injuries inflicted by governmental negligence are not addressed by the United States Constitution," by alleging that the city acted "intentionally, wilfully, and with wanton disregard for plaintiffs' rights, and/or through gross negligence." However, the specific conduct which the plaintiffs cite as the premise for the defendants' liability consists of their alleged negligent actions or their failure (through their employees) to attempt or to effectuate a rescue effort from a dangerous situation which they neither created nor exacerbated. If defendants here had failed to act they could not have been held liable for a constitutional violation. Thus, their alleged negligent or ineffective efforts under these circumstances cannot form the basis for a § 1983 claim, as a matter of law under the foregoing authorities. R.Vol. I, Tab 36 at 6–7.

**5.** The district court wrote:
The plaintiffs' complaint fails to plead an intent on the part of defendant Fowlkes to deprive them of their protected relationships

with their decedents. Plaintiffs do allege that defendant Fowlkes "intentionally, or with conscious disregard for Plaintiff's rights deprived Plaintiffs.... of the associational rights." However, this allegation is insufficient under *Trujillo*.
R.Vol. I, Tab 37 at 2.
The district court noted that the claim in *Trujillo* was asserted under 42 U.S.C. § 1983, rather than *Bivens,* but that this distinction is immaterial, citing *Carlson v. Green*, 446 U.S. 14, 21 n. 6, 100 S.Ct. 1468, 1473 n. 6, 64 L.Ed.2d 15 (1980). Finally, the district court stated:
Defendant William Savage also has filed a motion to dismiss or, in the alternative, motion for a more definite statement. The plaintiffs have asserted a § 1983 claim against defendant Savage. For the reasons previously stated by the court in support of his decision to grant the motion to dismiss filed by defendant Fowlkes, the court concludes that the plaintiffs have failed to state a § 1983 claim against defendant Savage.
*Id.* at 2–3.

1. [Have plaintiffs] stated a cause of action against the City of Edmond, and its police officers, under the 14th Amendment to the Constitution of the United States arising from their actions which contributed to the death and injury of plaintiffs during the 1986 Edmond Post Office massacre?

2. [Have plaintiffs] stated a cause of action against various federal officers under the 5th Amendment to the Constitution of the United States arising from their actions which contributed to the death and injury of plaintiffs during the 1986 Edmond Post Office massacre?

Within these broad issues, particular questions are whether the charged conduct of the defendants was actionable as a violation of any constitutional duty owed to plaintiffs or their decedents either by reason of its intrinsic nature or the state of mind motivating it; for the purpose of this determination, the extent, if any, which conclusory allegations of the complaint characterizing the defendants' state of mind may prevail over the situation clearly appearing from specific allegations; and whether the situation at the post office when the shooting occurred gave rise at all to, or rendered causally relevant, the constitutional duties upon which plaintiffs premise their case.

### III.

### STANDARD OF REVIEW

Reviewing *de novo* the sufficiency of the complaint, we must accept its well-pleaded allegations as true and construe them in the light most favorable to the pleader. *Zinermon v. Burch,* —— U.S. ——, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *National Commodity & Barter Ass'n. v. Gibbs,* 886 F.2d 1240, 1244 (10th Cir.1989). Dismissal was proper only if it appears beyond reasonable doubt that the plaintiff can prove within such allegations no set of facts in support of the claim which would entitle him to relief. *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987). While reasonable inferences drawable therefrom

must be accepted, mere conclusions characterizing pleaded facts are not, *Newport News Shipbuilding & Dry Dock Co. v. Schauffler,* 303 U.S. 54, 57, 58 S.Ct. 466, 467, 82 L.Ed. 646 (1938), nor are "unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them." *Ryan v. Scoggin,* 245 F.2d 54, 57 (10th Cir.1957).

Viewing the complaint accordingly, we conclude that the district court did not err in granting defendants' motions and in dismissing the action.

### IV.

### DISCUSSION

### A.

*Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), in a prison situation, firmly establishes the rule with its constitutional and decisional rationale that negligent conduct does not implicate the due process clause of the Fourteenth Amendment to afford section 1983 relief.

As has been seen, the district court employed a negligence analysis in light of *Daniels* to support the dismissal of plaintiffs' action against the city defendants, and we do not disagree with the result. The premises for this analysis sufficiently appear from Judge Thompson's orders, except for the language in the complaint purporting to charge, beyond mere negligence, gross negligence and wanton and intentional conduct on the part of the defendants. As to this problem, a further analysis seems called for.

### B.

■ The formulation in a pleading of "intentionally, wilfully, and with wanton disregard for plaintiffs' rights, and/or through gross negligence," might be thought to say effectively no more than that the acts were performed with gross negligence, were it not for the rules of civil procedure concerning alternative pleadings.[6] It might be logical to consider "gross negligence" as conceptually nearer

---

**6.** Fed.R.Civ.P. 8(e)(2) provides that "[w]hen two   or more statements are made in the alternative

"negligence" than "wantonness" or "intentional conduct" on the *Daniels* spectrum [7] if nice distinctions were to be drawn on this point. But it is now unnecessary for us to resolve this still open question.[8] Even if gross negligence were deemed to have the same consequences under the doctrine of *Daniels* as ordinary negligence, there would remain in the complaint other characterizations far advanced on the spectrum in the direction of liability.

It appears that counsel for plaintiffs designed the allegations in question to fully bridge a possible gap between the pleaded case and any required degree of culpability on the part of the defendants to establish a federal claim—in unwitting fulfillment of predictions of artful pleading in *Daniels*.[9] But the petitioner's suggestion noted there that he might have alleged the pillow in question was left on the stairs with the intention of harming him [as farfetched as that may have been] is unmatched in either specificity or effect by the conclusions of the complaint here which cannot be construed to charge that defendants had intent or wilfulness to kill or otherwise harm plaintiffs or their decedents, nor a state of mind of wanton, reckless, or grossly negligent indifference whether or not they were killed or wounded.

Perhaps the conclusory, almost euphemistic, phrasing in the complaint can be better understood from the explanation in appellants' brief at 3 that the reason they did not amend pursuant to leave granted was because in view of Rule 11 [10] they "could plead no additional facts." Surely, if the allegations of defendants' intent, beyond mere negligence, were other than good-faith argument of a legal nature as authorized by the rule, at least some supporting facts would appear.

Be this as it may, the conclusory language referred to is so at variance with the

---

and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements."

**7.** [Despite possibly fine distinctions otherwise] the difference between one end of the spectrum—negligence—and the other—intent—is abundantly clear.
474 U.S. at 335, 106 S.Ct. at 667.

**8.** Various related questions have been discussed by the Supreme Court or this court, focusing on the Fourth, Eighth or Fourteenth Amendments, or a combination, in relation to essential states of mind, but all agree that the Supreme Court has left open whether gross negligence should be considered a species of negligence in application of *Daniels*. E.g., *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1204 n. 8, 103 L.Ed.2d 412 (1989); *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 1002, 103 L.Ed.2d 249 (1989); *Whitley v. Albers*, 475 U.S. 312, 317, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986); *Berry v. City of Muskogee*, Okl., 900 F.2d 1489, 1496 n. 9 (10th Cir. 1990); *Archuleta v. McShan*, 897 F.2d 495, 499 n. 8 (10th Cir.1990); *Harris ex rel. Harris v. Maynard*, 843 F.2d 414, 416 (10th Cir.1988). Two dissenting opinions present opposite views of what the answer should be. See *City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 107 S.Ct. 1114, 1116, 94 L.Ed.2d 293 (1987) (Justice O'Connor, joined by the Chief Justice, Justice White and Justice Powell, dissenting); *Berry, supra* at 1493 (Judge McKay dissenting). See also *Beck v. Calvillo*, 671 F.Supp. 1555, 1560 (D.Kan.1987).

**9.** The court wrote in *Daniels:*

Petitioner also suggests that artful litigants, undeterred by a requirement that they plead more than mere negligence, will often be able to allege sufficient facts to support a claim of intentional deprivation. In the instant case, for example, petitioner notes that he could have alleged that the pillow was left on the stairs with the intention of harming him. This invitation to "artful" pleading, petitioner contends, would engender sticky (and needless) disputes over what is fairly pleaded. What's more, requiring complainants to allege something more than negligence would raise serious questions about what "more" than negligence—intent, recklessness, or "gross negligence"—is required, and indeed about what these elusive terms mean.... But even if accurate, petitioner's observations do not carry the day. In the first place, many branches of the law abound in nice distinctions that may be troublesome but have been thought nonetheless necessary.
474 U.S. at 334, 106 S.Ct. at 666–67.

**10.** Fed.R.Civ.P. 11 provides in part:

The signature of an attorney or party [on a pleading] constitutes a certificate by the signer that the signer has read the pleading ...; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

specifically pleaded facts as to constitute no more than unwarranted inferences drawn from those facts or footless conclusion of law predicated upon them. *Ryan,* 245 F.2d at 57. The necessity of drawing distinctions as recognized in *Daniels* applies with compelling force here.

The city defendants played no part in creating the danger to the victims, nor did they do anything to render them more vulnerable to those dangers. It is not alleged in the complaint, although appellants' counsel orally argued, that other people were prevented from entering the building who could have aided the victims of the massacre.[11] It is obvious, however, that believing there was a hostage situation inside, had the police permitted others to rush into the midst of the audible gunfire, there might have been some basis for charging recklessness or indifference towards the public and possibly toward those inside. *Cf. Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

We conclude, as did the district court, that if any culpability were factually alleged it would have been no more than ordinary negligence.

### C.

■ There is an additional reason to sustain the judgment of the district court.

One of the assumptions underlying plaintiffs' case has been that the situation at the Edmond Post Office was analogous to a prison setting, or involved other special circumstances giving rise to a duty of affirmative action on the part of the city defendants. *See e.g., Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and *Harris ex rel. Harris v. Maynard,* 843 F.2d 414 (10th Cir.1988) (prison situations); *Youngberg v. Romeo,* 457 U.S. 307, 314–25, 102 S.Ct. 2452, 2457–63, 73 L.Ed.2d 28 (1982) (mental patients involuntarily committed to a state hospital); *Revere v. Mass.*

*Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) (suspects in police custody).

After the district court dismissed the plaintiffs' claims *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), was decided, further interpreting the requirements of substantive due process and setting limits on special circumstances outside the prison setting giving rise to an affirmative duty to act.

In *DeShaney,* a young boy suffered permanent brain damage after repeated beatings by his father. The boy's mother brought a civil rights action against social workers and others who had received complaints of abuse, alleging their failure to remove him from his father's custody was a deprivation of his liberty in violation of the due process clause of the Fourteenth Amendment. The Supreme Court held that although the defendants may have breached duties under state tort law, the state had no constitutional duty to protect the boy from his father, explaining,

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.... Its purpose was to protect the people from the State, not to ensure that the State protected them from each other....
>
> [A] State's failure to protect an individual against private violence simply does

---

**11.** The complaint states that a number of the victims "were injured after the time in which the police could have, and should have, acted in order to protect those inside" and that they

"were allowed to die without being extended adequate medical care for over an hour and a half." R.Vol. I, Tab 1 at 7.

not constitute a violation of the Due Process Clause.

109 S.Ct. at 1003–04.

The Court said affirmative duties of care and protection arise under the Constitution only "with respect to particular individuals" and "in certain limited circumstances." *Id.* at 1004–05. These affirmative duties arise "not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 1006.

*DeShaney* involved private violence by a private actor; the Court emphasized that the victim was in the custody and control of his own father. While the state may have been aware of the dangers the DeShaney child faced, "it played no part in their creation, nor did it do anything to render him any more vulnerable to them ... it placed him in no worse position than that in which he would have been had it not acted at all." *Id.*

In the case before us, limitations on the victims' liberty were imposed by their assailant, Sherrill, not by the police. The fact that the police surrounded the post office when summoned to the scene did not create a special situation in which affirmative duties of protection arose. A contrary rule would impose constitutional duties on the police whenever they respond to reports of violence and assemble at the scene, not just in "certain limited circumstances" and "with respect to particular individuals" as taught by *DeShaney*. *Id.* at 1004–05.

For this additional reason, we hold that the result reached by the district court was correct irrespective of the question of state of mind, for as observed in *DeShaney*, "Because we conclude that the Due Process Clause did not require the State to protect Joshua from his father, we need not address respondents' alternative argument that the individual state actors lacked the requisite state of mind 'to make out a due process violation.'" *Id.* at 1007 n. 10. We have chosen to address the latter reason, however, because it properly was the basis of the ruling below in light of then existing authority, and the situational factors which were persuasive that the quality of defendants' conduct involved no more than negligence, if that, under *Daniels,* coalesced under *DeShaney* to render defendants' states of mind immaterial.

### D.

◼ Little need be added concerning the claimed failures of the postmaster and the guardsmen to train, supervise, examine or afford medical care to Sherrill in deprivation of plaintiffs' associational right. We agree with the district court that the complaint fails to allege a violation of that right.

The right to intimate or familial association as a constitutionally-protected liberty interest was recognized in *Trujillo v. Board of County Comm'rs.,* 768 F.2d 1186 (10th Cir.1985), *supra.* But to state a claim under section 1983 based on a deprivation of this right, "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required." *Id.* at 1190. The same requirement would apply in stating a *Bivens* claim for deprivation of the right of intimate or familial association. *See Carlson v. Green,* 446 U.S. 14, 21 n. 6, 100 S.Ct. 1468, 1473, 64 L.Ed.2d 15 (1980). We said "this intent may not be transferred" because an unconstitutional deprivation of the freedom of intimate association occurs "only if the [defendant's] conduct was directed at that right." *Id.*

Assuming without deciding that a direct causal link between the alleged failures of the defendants and the deaths of the victims was sufficiently pleaded, *cf. City of Canton,* 109 S.Ct. at 1203, the same cannot be said of any specific intent to interfere with the particular relationship in question.

To allege that "[b]y [specified] acts and conduct ... defendant intentionally, or with conscious disregard for plaintiff's rights" deprived them of associational rights, with the qualification immediately following that "[s]pecifically, Defendant knew, or should have known that by the actions set forth above, death was likely to

occur, and the plaintiffs, and those they represent, would be denied the companionship and association of the decedent," does not meet the *Trujillo* requirement. *See also Archuleta,* 897 F.2d at 499–500.

Again, we are confronted with unwarranted conclusions of the nature already held to be insufficient as factual allegations with respect to the claims against the city defendants, this time by specific qualifications aimed wide of the target marked by *Trujillo*. Nowhere in the complaint is there an allegation that any claimed acts or omissions, however intentional, occurred with the specific intent on the part of the defendants to deprive the plaintiffs of their rights of association with the victims.

## V.

## CONCLUSION

The complaint fails to state a claim on which relief can be granted either under section 1983 or *Bivens*. The failure of the plaintiffs' federal claims at the Rule 12 motion stage, plaintiffs having elected not to amend, warranted dismissal of the state claim, as to the merits of which we of course express no opinion. Accordingly, the court's orders dismissing the complaint and the action are AFFIRMED.