Dorothea HUNTER, Administratrix of the Estate of David B. Hadden, deceased and in her own right, Plaintiffs,

v.

CARBONDALE AREA SCHOOL DISTRICT and Northeastern Education Intermediate Unit # 19, Defendants.

Civ. No. 3:91–1564.

United States District Court, M.D. Pennsylvania.

Jan. 7, 1993.

Patrick C. Carey, Kevin J. O'Hara, Scranton, PA, for plaintiffs.

Michael Anthony Genella, Anthony J. Piazza, Jr., John R. Lenahan, Jr., Scranton, PA, for defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Plaintiffs, Dorothea Hunter, Administratrix of the Estate of David B. Hadden, deceased, and in her own right, filed this civil rights action on November 16, 1991 against the Defendants, Carbondale Area School District and Northeastern Education Intermediate Unit # 3. An amended complaint was later filed by the Plaintiffs on January 2, 1992. The Plaintiffs allege that the conduct of the Defendants violated the decedent's civil rights under Title 42 U.S.C. § 1983, the Fourteenth and Eighth Amendments to the United States Constitution, 28 U.S.C. §§ 1331 and 1343, as well as Article I, Section 1 of the Pennsylvania Constitution, the Federal Handicap Statute 20 U.S.C. § 1400, *et seq.*, the Vocational Rehabilitation Act, 29 U.S.C. § 794 and the various provisions of the Pennsylvania Education Act. Plaintiffs also assert pendant state law claims for reckless infliction of emotional distress upon Dorothea Hunter, and gross negligence and reckless conduct pursuant to supplemental jurisdiction under 28 U.S.C. § 1367. The Plaintiffs have listed ten (10) counts against the Defendants, seeking fifty thousand ($50,000.00) dollars in damages and attorney's fees. (Doc. No. 5).

The case is before the Court on the Defendants' Motion to Dismiss under Fed.R.Civ.P. 12(b) for failure to state a claim. (Doc. Nos. 18 & 20). The Plaintiffs have previously filed a brief in opposition to the Defendants' Motions to Dismiss the case. (Doc. No. 26).

This Court issued an Order to all parties dated March 20, 1992, noting that a similar case was pending before an en banc panel of the Third Circuit Court of Appeals entitled *D.R., et al. v. Middle Bucks Area Vocational Technical School, et al.,* 972 F.2d 1364 (3d Cir.1991), *rehearing en banc granted, opinion vacated* (January 24, 1992). Accordingly, by order dated March 20, 1992 we held that once a decision was rendered in the *D.R.* case, the Defendants could submit additional information in light of the opinion. On August 11, 1992 the Third Circuit Court of Appeals affirmed the District Courts dismissal of a complaint that was similar to the one brought by the Plaintiffs in the present action. *See D.R. by L.R. v. Middle Bucks Area Vocational Technical School, et al.,* 972 F.2d 1364 (3d Cir.1992). The Defendants have filed supplemental briefs to their Motions to Dismiss. (Doc. Nos. 30 & 31). Plaintiffs have also filed a supplemental brief in opposition to the Motion to Dismiss the Plaintiff's complaint. (Doc. No. 32). The Court will address the arguments raised in the supplemental briefs filed by both Plaintiffs and Defendants.

## BACKGROUND

Plaintiffs, Dorothea Hunter, Administratrix of the Estate of David B. Hadden, the decedent, and Dorothea Hunter in her own right, filed suit against Defendants as a result of the drowning death of the Plaintiff's minor decedent on November 16, 1989. The Plaintiff, Dorothea Hunter, resides at 288 Park St. Carbondale, Pennsylvania. The Decedent who was age twelve (12) years of age at the time of his death resided with his mother, Dorothea Hunter and his grandmother. The Decedent was a seventh grade special education student at the Carbondale Area Junior–Senior High School, Carbon-

dale, Pennsylvania and was considered an "exceptional student" as defined by both Federal and State law. As such, the Decedent was designated to receive an education under the "Individualized Education Program" that was mandated by both the Federal and State law which program was prescribed and implemented by the Defendants[1] (hereinafter I.E.P.). The I.E.P. is designed to identify the student's educational level and set precise goals for the specific education service programs that are provided to the student. The I.E.P. also designates the specific placement and the extent to which the student will be able to participate in regular educational programs. On April 6, 1989 an I.E.P. printout indicated that the Decedent was to be placed in a "Secondary/Part-time" Program for Learning Disabled Students and was not to participate in any regular "mainstream" education except for specific areas of music, gym and home economics. The Decedent attended seventh (7th) grade as a Special Education Student at Carbondale Area Junior–Senior High School located on Route 6 in Carbondale, Pennsylvania, which building housed grades 7–12.

On November 15, 1989, the Decedent allegedly became involved in an altercation with another student in the hallway of the Carbondale Area Junior–Senior High School during school hours which resulted in the Decedent being sent to detention after school the following day. On November 16, 1989, the Decedent reported for detention after school classes ended for the day. During the detention period, the Decedent was involved in another altercation with other juvenile individuals, which led to a chase through the hallways after the boys were released from detention. The Decedent ultimately escaped the juveniles, however, they again spotted the Decedent outside the school building where they continued chasing him off school grounds, across Route 6 and eventually to an embankment along a nearby stream. While attempting to flee his pursuers, the Decedent either slipped, stumbled or was forced into

---

1. The pertinent federal statutes that apply are the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. and the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 794. The State Statutes that apply are found in Title 24, Education of the Pennsylvania Consolidated Statutes, 24 Pa.S.A. § 13–1317, 1327, 1333, 1343 and 1372.

the stream. The Plaintiffs allege that the juvenile youths saw the Decedent in the waters of the stream but did not do anything to help him. In fact, the Plaintiffs allege one of the youths picked up the Decedent's school books that were lying on the side of the embankment and threw them in the water at the Decedent yelling "Catch these!". Tragically, the Decedent drowned in the stream. Although he was declared missing on November 17, 1989, his body was not found until March 19, 1990, downstream in Scranton, Pennsylvania. A subsequent autopsy by the County Corner determined the cause of death was hypothermia and drowning.

Plaintiffs allege that the conduct of the Defendants violated the Decedent's civil rights under 42 U.S.C. § 1983, his Fourteenth Amendment rights under the United States Constitution, as well as various rights under the Pennsylvania Constitution and other federal and state enactments.

It is under this factual background that the Court will review and analyze the above motion.

## MOTION TO DISMISS

In deciding a Motion to Dismiss, all material allegations must be accepted as true and construed in a light most favorable to the non-moving party. *Truhe v. Rupell,* 641 F.Supp. 57 (M.D.Pa.1985). A complaint may be dismissed only if it appears that the Plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Id.* The Court must view all allegations made in the complaint, as well as all inferences reasonably drawn therefrom, in favor of the Plaintiff. *Sturm v. Clark,* 835 F.2d 1009 (3d Cir.1987). Because a Motion to Dismiss results in a determination on the merits at the earliest stage of the proceedings, the Court is obligated to construe the Plaintiff's complaint in favor of the Plaintiff. *Pittsburgh National Bank v. Welton Becket Associates,* 601 F.Supp. 887 (W.D.Pa.1985). A complaint should never be dismissed for failure to state a claim unless the court is convinced beyond doubt that the Plaintiff can prove no set of facts to support a claim which would permit a recovery. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2

L.Ed.2d 80 (1957); *Hooten v. Pennsylvania College of Optometry,* 601 F.Supp. 1151 (E.D.Pa.1984).

### A. *Violation of Civil Rights Pursuant to 42 U.S.C. § 1983*

The Plaintiffs assert that under applicable state law a special relationship existed between the Defendants and the students entrusted to their care including Plaintiffs' decedent, David Hadden, and the other juvenile individuals. The Plaintiffs further allege that the Defendants had a right to control and discipline the students. In essence, the Plaintiffs allege that the Defendants deprived the Decedent of his liberty without due process of law when a special relationship existed, in violation of his rights under the Fourteenth Amendment, by failing to protect against a risk of violence when the Decedent was placed in detention after school on the afternoon of November 16, 1989 with other non-exceptional students.

The Due Process Clause of the Fourteenth Amendment provides that "no State shall ... deprive any person of life, liberty, or property, without due process of law". Plaintiffs assert that the State deprived the Decedent of his liberty interest by failing to provide him with adequate protection against the other students' violent behavior. It is a well-established principle that the Due Process Clause does not impose an affirmative duty upon the state to protect its citizens. Rather, there is nothing in the language of the Due Process Clause of the Fourteenth Amendment, that requires a state to protect the life, liberty and property of its citizens against harm by private actors. The Due Process Clause is phrased to limit the State's power to act, not as an assurance of certain minimal levels of safety. *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989); *Fialkowski v. Greenwich Home for Children, Inc.,* 921 F.2d 459, 465 (3d Cir.1990); *D.R. v. Middle Bucks Area Vocational–Technical School,* 972 F.2d 1364 (3d Cir.1992). "The purpose of the Due Process Clause was to protect the people from the State, not to ensure that the State protected them from each other. The Fram-

ers were content to leave the extent of governmental obligation in the latter area to the democratic political processes." *See DeShaney*, 489 U.S. at 196, 109 S.Ct. at 1003. However, when the state enters into a "special relationship" with a citizen, it can be liable to that citizen for the private actions of third parties. *See Cornelius v. Town of Highland Lake, Ala.*, 880 F.2d 348, 352 (11th Cir.1989). Liability against a state actor attaches under 42 U.S.C. § 1983 when the state fails, under certain blameworthy circumstances, to protect the health and safety of the citizen to whom it owes an affirmative duty. *See Cornelius* at 353.

In the present case, the Plaintiffs contend that under existing federal and state statutes a special relationship existed between the parties. This Court must decide whether the school Defendants had such a special relationship with the Plaintiffs by virtue of the fact that the Decedent was placed in special education courses at Carbondale Area Junior–Senior High School as required by federal and state law. Plaintiffs argue that the state entered into a special relationship when they restrained the Decedent's freedom to act by placing him in detention after school.

The United States Supreme Court in *DeShaney v. Winnebago County Dept. of Social Services, supra*, refused to impose a constitutional duty upon a state to protect the life, liberty or property of a citizen from the deprivations by private actors absent the existence of a special relationship between the parties. *DeShaney* involved the state's repeated receipt of reports of abuse of a minor by his father. The state agency received reports of repeated instances of child abuse by the father but failed to remove the baby from the home. The father eventually beat the child so severely that the child fell into a life-threatening coma. The child and his mother filed a 42 U.S.C. § 1983 action against state officials claiming that they deprived the minor of his liberty without due process of the law in violation of the Fourteenth Amendment by failing to protect him against the risk of violence from the father and by failing to remove him from the violent environment.

In *DeShaney*, the Court determined "a State's failure to protect an individual against private violence by a third party simply does not constitute a violation of the Due Process Clause," *DeShaney*, at 197. The Court noted, however, that in certain limited circumstances the Constitution does impose upon a State an affirmative duty to protect and care for certain private individuals. For example, in, *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) the Court found that a State did have an affirmative duty to provide adequate medical care for prisoners due to the fact that incarceration prevented the inmates for caring for themselves. The Court later broadened *Estelle* by imposing a duty of care on the State to provide protection and care for involuntarily committed mental patients. *See Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).

A review of the Plaintiffs' amended complaint reveals that the *Estelle–Youngberg* exceptions are not applicable to this case. However, the Plaintiffs assert that the state owed a duty to the Decedent

> "when the Defendants took the Decedent[s] into their custody and held him against his will in detention, the Constitution imposed a duty to assume some responsibility for his safety and well-being". (See Amended Complaint, Doc. No. 5).

A review of a recent decision by the Third Circuit that is very similar to the present case, further affirms the fact that the Defendants in no way violated the Plaintiffs' due process rights. In *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364 (3d Cir.1992), the Third Circuit examined the liability of a school district on school property during school hours.

More specifically, Plaintiffs in *D.R.* were two female students in a graphic arts class at Middle Bucks Area Vocational Technical School. The Plaintiffs alleged that while attending the arts class during the 1989–90 school year, several male students in the same class sexually abused them. The conduct had taken place in the unisex bathroom and darkroom, both of which were part of the graphic arts classroom. The Plaintiffs asserted the abuse took place two to four times

per week mostly from January to May of 1990. One of the Defendants in the case was the student teacher in the graphic arts classroom during the time of the alleged conduct in question. The Plaintiffs asserted that the student teacher should have been in the classroom when the conduct had taken place or either heard or should have heard the incidents taking place. It was learned during the case that the student teacher had difficulty controlling the behavior of the class, especially where some of the misconduct was the student defendants using obscene language and gestures including physically but not sexually touching the females, including the student teacher in the classroom. After noting the appropriate standard of review on a motion to dismiss, the Court followed the U.S. Supreme Court's decision in *DeShaney, supra,* and declined to impose any constitutional duty upon a school district to protect students from misconduct by other student Defendants. The issues decided in *D.R., supra,* were nearly identical to those in the present case.

In *D.R., supra,* the Plaintiffs as in the present case pleaded that the state statute's combined with the Defendants' *in loco parentis* responsibility formed a special relationship as outlined under *DeShaney.* The Court carefully considered Pennsylvania's scheme of compulsory attendance and the school's exercise of *in loco parentis* authority over their pupils, and rejected the Plaintiffs' arguments that the school district "restricted" the students' freedom of movement because the state law required the students to attend school every day.

Pennsylvania law mandates that every child until the age of seventeen (17) years is of "compulsory school age" and therefore must attend a school daily. *See* Pa.Stat.Ann. tit. 24 § 13–1327. Failure to attend classes results in penalization of parents. *See* Pa. Stat.Ann. tit. 24 §§ 13–1333 and 1343. The Court in *D.R.* and the U.S. Supreme Court in *DeShaney* decided that state statutes requiring students to attend school do not rise to the level where the state prevents the students from meeting their basic needs as outlined in *DeShaney.*

In *D.R.,* the Third Circuit examined the *DeShaney* Court's rationale for the *Estelle–Youngberg* exception and looked to whether or not compulsory attendance paired with the *in loco parentis* authority of the school defendants resulted in an affirmative restraint of the Plaintiff's liberty "by the state that she was left without reasonable means of self-protection". *See D.R.* at 1370.

However, the *Estelle–Youngberg* type of custody referred to by the Court in *DeShaney,* was different from that of the *D.R.* Plaintiffs and the Plaintiffs in the present case. The state's duty to inmates in state prisons and patients involuntarily committed in mental institutions exists because of the full time continuous restriction of liberty in both environments. Prisoners and patients are totally dependant upon the state for the most basic needs of food, shelter, medical care and clothing. These individuals are not in a position to care for themselves and their freedom is obviously restricted.

In the present case it was the Decedent's mother who decided where the education of the Decedent would take place. For example, the Decedent's mother had the option of a private or public education. This type of discretion is even more prevalent in cases of special education students, where the parents have even greater control since they must approve the precise educational program developed for their child. *See* 20 U.S.C. § 1415 (1988); 22 Pa.Code §§ 14.32, 14.61–68 (1992). The Decedent's mother had personally participated in and approved of the I.E.P. developed for the Decedent. However, the Decedent's mother did not desire to participate in a Program Planning Meeting that was used to complete the I.E.P. See exhibits attached to the Plaintiff's Responsive Brief in Opposition to Defendant's Motions to Dismiss Plaintiff's Amended Complaint. (Doc. No. 26). If the Decedent's mother had not approved the I.E.P. or had she feared for the health and safety of the Decedent then she could have been justified in withdrawing the child from Carbondale Area Junior–Senior High School. *See Zebra v. School District of City of Pittsburgh,* 449 Pa. 432, 296 A.2d 748 (1972).

Finally, the Third Circuit in *D.R.* specifically determined that:

"the school defendants' authority over D.R. during the school day cannot be said to create the type of physical custody necessary to bring it within the special relationship noted in *DeShaney*, particularly when their channels for outside communication were not totally closed." *See D.R.* at 1372.

The Third Circuit emphasized that parents remain the primary caretakers of students despite the fact that students are required by law to attend class every day. *See Pa.Stat. Ann. tit.* 24, § 13–1301 (1992).

"It is the parents who decide whether that education will take place in the home, in public or private schools or, as here, in a vocational-technical school. *DeShaney*. For some, the options may be limited for financial reasons. However, when enrolled in public school parents retain the discretion to remove the child from classes as they see fit. *See Pa.Stat Ann tit 24 § 15–1546* (1962 & Supp 1991) (religious instruction); *22 Pa Code § 11.26* (1992). In the case of special education students, the parents have even greater involvement since they must approve the precise educational program developed for their child. 20 U.S.C. § 1415 (1988); *22 Pa Code §§ 14.-32, 14.61–68* (1992)." *See D.R.* at 1371.

■ Parents are and remain the primary caretakers of students even though state laws require the students' presence in school and grant Pennsylvania teachers and principals *in loco parentis* status, *See Pa.Stat.Ann. tit. 24 § 13–1317.* This particular section acts in conjunction with section 5–510 which permits school boards and management to set and maintain reasonable regulations that govern student's conduct.

■ Therefore, in the present case the Defendants' authority over the Decedent during the school day cannot be said to create the type of physical custody necessary to bring it within the special relationship noted in *DeShaney* and *D.R., supra*, especially when all channels for communication to the outside were not totally closed. There is no evidence in the present case that the Decedent was forced or intimidated by the Defendants to report for detention. The Decedent could have decided not to report to detention for the day.

## B. *State Created Danger*

■ The Plaintiffs have also asserted that the Defendants are liable because Defendants placed the Decedent in an environment with other students who were dangerous toward the Decedent thereby violating the Plaintiffs' constitutional rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983:

"in a detention room with non-special education students who were older, in senior grades, more physically developed that David B. Hadden and who were known to have had a lengthy history of animosity toward and abuse of David B. Hadden which actions ultimately led to the foreseeable result of physical harm upon the person of David B. Hadden."

The Plaintiffs assert that the Defendants placed the Decedent at peril when he was placed in the detention room with the other students when the Decedent was only "a frail 70 lbs special education student of tender years."

In determining whether or not the Defendants are liable under this theory, post-*DeShaney* courts have "asked whether the state actors involved affirmatively acted to create Plaintiff's danger, or to render him or her more vulnerable to it. *See D.R.* (citing *Bryson v. City of Edmond,* 905 F.2d 1386, 1392 (10th Cir.1990)).

The state created danger theory, utilized to find a constitutional tort duty under § 1983 outside a strict custodial setting is viable in limited circumstances. "Liability under the state-created danger theory is predicated upon the states' affirmative acts which work to Plaintiffs' detriment in terms of exposure to danger." *Id. at 1374. See also Cornelius v. Town of Highland Lake,* 880 F.2d 348 (11th Cir.1989); *Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989); and *Brown v. Grabowski,* 922 F.2d 1097 (3d Cir. 1990). In *Brown, id,* the Third Circuit concluded that a Plaintiff must supply the Court with evidence that the state actors acted to create the danger that the third party produced against the Plaintiff thereby triggering

a viable constitutional duty to assist the Plaintiff's access to the civil courts.

In *D.R.* the Third Circuit found that even though one school defendant was aware of suspicious activity and failed to investigate, such nonfeasance did not rise to the level of a constitutional violation. As the U.S. Supreme Court said in *DeShaney*, "the most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them". *D.R.*, at 1369, (quoting *DeShaney v. Winnebago County Dept. of Social Services,*) *supra.*

In the present action there is nothing in the record before the Court that suggests that either Defendant encouraged, facilitated or authorized the students to engage in the conduct which took place. There is no evidence at all that the Decedent would be attacked and pursued after the detention period ended by the other juveniles. The only notice that the school had of any danger to the Decedent was the incident which occurred the day before which led to the Decedent being detained after school on November 16, 1989.

As in the *D.R.* case and *Brown*, there is no evidence indicating the Defendants created the Decedent's peril, added to the risk of harm to the Decedent or acted to render the Decedent more vulnerable to the alleged student Defendants' conduct. The unwarranted assault against the Decedent was perpetuated by private individuals off school property and after school was over for the day. In short, the Plaintiffs' allegations are insufficient to demonstrate, as required under *DeShaney*, that the Defendants had limited the decedents freedom to move or barred his access to outside support. Nor have the Plaintiffs shown that the Defendants violated a constitutional duty by creating the danger posed by the other students. *See Brown* 922 F.2d at 1116.

### C. State Established Policy, Custom and Practice

The third theory utilized by the Plaintiffs is the contention that the Defendants, acting under the color of state law and in furtherance of the Defendants' established custom, practice and policy, comprised a denial of the Plaintiffs' protected liberty interest under the Fourteenth Amendment. (See Amended Complaint, Count I and Count III). In *Stoneking v. Bradford Area School District,* 882 F.2d 720, 725 (3d Cir.1989), *cert. denied* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990) (Stoneking II) the Third Circuit decided that the necessary element of liability is a violation by state actors not private individuals. The assault against the Decedent and the subsequent chase off school property, across Route 6 to the embankment of the stream was done by other students who were private actors. Thus, liability in the present case under this theory cannot be found under 42 U.S.C. § 1983.

### D. State Constitution and State Law Claims

The Plaintiffs have sought to impose liability on the Defendants through alleged violations of the Pennsylvania Constitution and Pennsylvania State Statutes. This argument stems from the position that the Defendants acting under color of state law violated the Decedent's rights when the Decedent was placed in the detention room with other mainstream students. However, it is certain that a violation of a duty under a state statute, by itself, in not sufficient to state a § 1983 claim. *See Brown*, 922 F.2d at 1113 (citing *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980)). "Section 1983 liability arises only from a violation of federal statutory or constitutional rights under color of state law". *D.R. v. Middle Bucks Area Vocational–Technical School*, at 1375 (quoting *Brown v. Grabowski*, 922 F.2d 1097 (3rd Cir.1990)).[2] In the pres-

---

**2.** After *DeShaney* the Third Circuit has decided not to impose liability under § 1983 when the circumstances of the case are distinguished between affirmative duties of care imposed by a state on its agents through state statute and of constitutional duties to protect those whose basic needs are taken away from them as outlined in *DeShaney* and *D.R.*, "we can no longer rely on the statutory and common law duties imposed in Pennsylvania on school officials as the basis of a duty to protect students from harm occurring as

ent case, the Plaintiffs have asserted liability against the Defendants through state law and state constitutional claims. These claims must fail due to the recent decisions cited in the *D.R.* decision.

It would be impossible to overstate the tragedy suffered by this family, but the law does not impose any special liability on public officials under such circumstances.

## CONCLUSION

Based on the forgoing reasons, this Court grants the Defendant's Motion To Dismiss the Plaintiffs' Amended Complaint in it's entirety.

An appropriate Order is Attached.

## ORDER

AND NOW, THIS 7th DAY OF January, 1993, IT IS HEREBY ORDERED THAT:

1. The Defendant's Motion To Dismiss the Plaintiffs' Amended Complaint is Granted.

2. The Clerk of Courts is directed to close the case.

the result of a third person". *See Stoneking II* at   723.