960 F.2d 1493
 Gilbert MEDINA, Plaintiff-Appellant,
v.
The CITY AND COUNTY OF DENVER; Marty O'Dowd; Ralph
Benfanti; Denver Police Officer Using Patrol Car 27 or 127
on 9/23/86 Between 5:00 and 6:00 p.m.; Rick Shook; Teri
Rathburn; George Torsney; Robert Thomas; and Denver
Police Officers John Does 1-5 Who Are Completely
Unidentified at This Time; all individually and in their
official capacities; Defendants-Appellees.
 No. 90-1166.
 United States Court of Appeals,
Tenth Circuit.
 March 31, 1992.
Rehearing Denied May 11, 1992.
 
 John R. Holland (Kim L. Morris with him on the brief) of the Law Offices of John Robert Holland, Denver, Colo., for plaintiff-appellant.
 Robert M. Liechty (Theodore S. Halaby with him, on the brief) Halaby & McCrea, Denver, Colo., for defendants-appellees.
 Before TACHA, BALDOCK, and EBEL, Circuit Judges.
 EBEL, Circuit Judge.
 
 
 1
 This case involves a bystander's claim against the City and County of Denver and several Denver police officers for injuries sustained when the bystander was struck by a suspected felon during a high speed automobile chase. The district court found that the bystander did not state a claim under 42 U.S.C. § 1983 because he did not demonstrate that "the police conduct was directed toward him," and therefore the court granted summary judgment for the defendants. We affirm the district court's order, but on different grounds.
 
 
 2
 We affirm summary judgment for the police officers based on qualified immunity. It was not clearly established at the time of the accident that recklessness could give rise to section 1983 liability, nor was it clearly established that the police could be liable to third parties for injuries caused by a suspect. We affirm summary judgment for the City and County of Denver because the appellant failed to produce any evidence that Denver maintained a policy or course of conduct authorizing or condoning reckless, high speed chases that was deliberately indifferent to the rights of innocent bystanders.
 
 FACTS
 
 3
 On September 23, 1986, the appellant was bicycling when a stolen white Cadillac driven by the suspect, Bryan Brown, struck and injured him. At the time of the impact, the suspect was the target of a high speed automobile chase conducted by Denver police officers. For purposes of its summary judgment ruling, the district court assumed certain critical facts in favor of the appellant: namely, that the police officers recklessly initiated the chase; that the streets were busy at the time of the chase; that the officers failed to follow regulations requiring proper communications with the police dispatcher; "that the officers exceeded their reported speeds; that the officers disobeyed a command order to stop the chase; and that the collision occurred because two police cars coming from opposite directions forced the suspect to turn directly into the [appellant] at the intersection." Dist.Ct.Op. at 1-2.
 
 
 4
 Although the parties disputed other facts, the district court found that "these disputes were not material to this court's determination." Id. at 1. The court accepted as true the factual allegations of the amended complaint, as well as the affidavits filed with the appellant's brief. Id. The district court then ruled that "[t]he [appellant's] case fails because none of the police conduct was directed toward him. It is well established that a section 1983 claim must be based upon an infringement of the plaintiff's individual rights. The abuse of official authority must be directed toward him, individually." Id. at 2. We affirm the district court's ultimate decision, although we do so on alternative grounds.[1]
 
 ANALYSIS
 
 5
 In the district court, the appellant asserted that the City and County of Denver and its police officers violated 42 U.S.C. § 1983[2] and "depriv[ed him] of his liberty interests protected under the Fourteenth Amendment Due Process Clause." Dist.Ct.Op. at 2.[3] Whatever may be the merits of a tort claim that the appellant might have brought against these defendants, we are not here evaluating a tort claim but rather a constitutional claim. In evaluating the appellant's constitutional claim, we must keep in mind that "[t]he Supreme Court has repeatedly warned that section 1983 must not be used to duplicate state tort law on the federal level." Washington v. District of Columbia, 802 F.2d 1478, 1480 (D.C.Cir.1986). The Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).
 
 I. Liability of the Officers
 
 6
 The district court concluded that the appellant's due process claim against the police officers was invalid because the appellant failed to allege or show that the officers' reckless conduct was "directed toward him, individually." Dist.Ct.Op. at 2. The reasoning of the district court was as follows: Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986), Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986), and City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989), held that the due process guarantee applies only to deliberate deprivations of life, liberty, or property by a government official. And our opinion of Archuleta v. McShan, 897 F.2d 495, 498 (10th Cir.1990), established that the defendants' conduct must be directed at the victim before it can be regarded as deliberate as to that victim. We agree with the district court as to these propositions. However, the court then interpreted Archuleta and the above-cited Supreme Court authority to require that reckless conduct must be directed at a particular victim in order for it to be deliberate. We disagree with this last stage of the district court's reasoning.[4]
 
 
 7
 Practically every court that has considered the issue has concluded that reckless intent may violate section 1983. See Torres Ramirez v. Bermudez Garcia, 898 F.2d 224, 227 (1st Cir.1990); Wood v. Ostrander, 851 F.2d 1212, 1214-15 (9th Cir.1988), modified on reh'g, 879 F.2d 583 (9th Cir.1989), cert. denied, --- U.S. ----, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990); Nishiyama v. Dickson County, Tenn., 814 F.2d 277, 282 (6th Cir.1987); Bass v. Jackson, 790 F.2d 260, 262-63 (2d Cir.1986); Davidson v. O'Lone, 752 F.2d 817, 828 (3d Cir.1984), aff'd, 474 U.S. 344, 106 S.Ct. 662, 677, 88 L.Ed.2d 662 (1986); White v. Rochford, 592 F.2d 381, 385 (7th Cir.1979); Britt v. Little Rock Police Dep't, 721 F.Supp. 189, 192 (E.D.Ark.1989); Martin A. Schwartz & John E. Kirklin, 1 Section 1983 Litigation: Claims, Defenses, and Fees § 3.4, at 127 & n. 186 (2d ed. 1991). We have similarly concluded that recklessness states a claim under section 1983. Harris v. Maynard, 843 F.2d 414, 416 (10th Cir.1988); Archuleta, 897 F.2d at 499. However, reckless intent does not require that the actor intended to harm a particular individual; reckless intent is established if the actor was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences. Archuleta, 897 F.2d at 499 & n. 8. Thus, reckless intent involves disregard of a particular risk rather than intent to cause a particularized harm.
 
 
 8
 For purposes of section 1983, it is not adequate to show that the defendant merely acted recklessly in disregard of a known risk to the public at large. Martinez v. California, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) (holding that decedent's death was too remote a consequence of the parole officers' action to hold them responsible under the federal and civil rights law). Rather, the defendant's conduct must be directed toward the plaintiff. However, given the fact that reckless intent involves an unreasonable disregard of a known great risk rather than intent to cause a particularized harm, the defendant's reckless conduct may be considered to be directed toward the plaintiff if the plaintiff is closely and immediately tied to the perceived substantial risk.
 
 
 9
 We believe that reckless conduct can be considered directed toward the plaintiff if (1) the plaintiff is a member of a limited and specifically definable group, (2) the defendant's conduct specifically put the members of that group at substantial risk of serious, immediate, and proximate harm, (3) the risk was obvious or known, and (4) the defendant acted recklessly in conscious disregard of that risk. It is not, however, necessary that the defendant know the specific identity of each person within such a group in order for his conduct to be deemed directed toward the individuals within the group. See Nishiyama v. Dickson County, Tenn., 814 F.2d 277, 280 (6th Cir.1987); Britt v. Little Rock Police Dep't, 721 F.Supp. 189 (E.D.Ark.1989); Timko v. City of Hazleton, 665 F.Supp. 1130 (M.D.Pa.1986). To satisfy these elements, a defendant must have actual or constructive awareness of the gravity of the risk, including its effect on a limited and specifically definable group. An act is reckless when it reflects a wanton or obdurate disregard or complete indifference to risk, for example "when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death" or grievous bodily injury. Archie v. City of Racine, 847 F.2d 1211, 1219 (7th Cir.1988) (en banc), cert. denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989); Apodaca v. Rio Arriba County Sherriff's Dep't, 905 F.2d 1445, 1446-47 n. 3 (10th Cir.1990) (reckless conduct in police pursuit cases must involve true indifference to risks created); Harris, 843 F.2d at 416; see also Temkin v. Frederick County Comm'rs, 945 F.2d 716, 720, 723 (4th Cir.1991) (reckless conduct in police chase cases must "shock the conscience" to be actionable), cert. denied, --- U.S. ----, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992).
 
 
 10
 Here, we do not attempt to define the precise parameters of the directedness component because it is not necessary to do so. The district court made no factual findings as to any of the critical matters that would have to be addressed. Instead, the court accepted the following allegations of the complaint as true: the officers acted recklessly; the chase occurred along a busy residential street during rush hour; the chase involved high speeds in excess of 60 miles per hour with repeated running of stop lights and stop signs; the officers involved in the chase deliberately disregarded supervisory orders to discontinue the chase; the dangerousness of such conduct to the people along the limited two mile chase route was known or obvious; the plaintiff was lawfully using the street as a bicyclist; and the police officers directly caused the suspect to turn into the plaintiff. It was error for the district court to conclude, as a matter of law, that these allegations were inadequate to allege reckless conduct directed at the plaintiff.[5]
 
 
 11
 Nevertheless, we affirm the district court's order to dismiss this complaint against the police officers on the alternative ground of qualified immunity. The appellees pleaded this defense in the district court. Answer, Record, vol. I, doc. 3, at 2; Defendants' Motion for Summary Judgment and Stay of Discovery, Record, vol. I, doc. 4, at 1-2. The court did not rule on the defense, but both sides have argued it on appeal.
 
 
 12
 The Supreme Court delineated the standard for evaluation of qualified immunity claims in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As this Circuit summarized in Hilliard, the defense of qualified immunity
 
 
 13
 provides that "[w]hen government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " In determining whether the law involved was clearly established, the court examines the law as it was at the time of the defendants' actions.
 
 
 14
 It is the plaintiff's burden to convince the court that the law was clearly established. In doing so, the plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it. Instead, the plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." While the plaintiff need not show that the specific action at issue has previously been held unlawful, the alleged unlawfulness must be "apparent" in light of preexisting law. The " 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " If the plaintiff is unable to demonstrate that the law allegedly violated was clearly established, the plaintiff is not allowed to proceed with the suit.
 
 
 15
 930 F.2d at 1518 (citations omitted).
 
 
 16
 Thus, we must examine whether it was clearly established in 1986 within a sufficiently analogous factual setting that the particular conduct of these police officers was grounds for a section 1983 violation. It is not enough to look at generalized legal principles. Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).
 
 
 17
 In determining whether the law was clearly established, we bear in mind that allegations of constitutional violations that require courts to balance competing interests may make it more difficult to find the law "clearly established" when assessing claims of qualified immunity. Benson v. Allphin, 786 F.2d 268, 276 (7th Cir.), cert. denied, 479 U.S. 848, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986); Melton v. Oklahoma City, 879 F.2d 706, 728 (10th Cir.), reh'g granted, 888 F.2d 724 (10th Cir.1989) (en banc), modified on reh'g, 928 F.2d 920 (10th Cir.1991) (en banc). Of course, conduct may be so egregious that a reasonable person would know it to be unconstitutional even though it is judged by a balancing test; however, the fact that competing interests must be balanced to determine constitutionality does inject an additional factor that must be considered in determining whether the conduct was clearly unconstitutional at the time of the actions in question.
 
 
 18
 Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. See Stewart v. Donges, 915 F.2d 572, 582-83 & n. 14 (10th Cir.1990). Our analysis leads us to conclude that it was not clearly established in 1986 (1) that recklessness could give rise to liability under section 1983 or (2) that a police officer could be liable under section 1983 for an injury caused not by the officer but by a suspect being chased by the officer.
 
 
 19
 1. Section 1983 Liability for Recklessness: Clearly Established?
 
 
 20
 Although it is now apparent in this Circuit and others that recklessness can give rise to a section 1983 claim based on the due process clause, the law on this issue was not clearly established in 1986. The Supreme Court had not yet addressed this question, as illustrated by the following statement in Daniels, 474 U.S. at 334 n. 3, 106 S.Ct. at 666 n. 3: "[T]his case affords us no occasion to consider whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." This Circuit did not clarify its position on whether reckless conduct could form the basis for a due process violation until Harris, 843 F.2d at 416, in 1988, and Archuleta, 897 F.2d at 499, in 1990. And, with a few exceptions,[6] the flurry of cases concluding that recklessness could implicate the due process clause did not begin within the other Circuits until after the events that form the basis for this lawsuit.
 
 
 21
 2. Police Liability for Injuries Caused by a Suspect: Clearly Established?
 
 
 22
 Nor was it clearly established in 1986 that a police officer could be liable under section 1983 for an injury caused not by the officer but by the suspect being chased by the officer.[7] The decisions cited by the appellant do not include any Tenth Circuit or Supreme Court cases on point. See Appellant's Opening Brief at 25-26. The appellant cites to one unpublished ruling in the United States District Court for the District of Colorado, but because that ruling was unpublished the appellant cannot rely on it to prove the clearly established law in this jurisdiction. The ordinary rule is that, by eluding arrest, the suspect is acting contrary to the law, and "absent special circumstances, no duty is imposed on a party to anticipate and prevent the intentional or criminal acts of a third party." Henry v. Merck & Co., 877 F.2d 1489, 1492 (10th Cir.1989). The officers do not control the suspect's actions and would not normally be responsible for the suspect's conduct.[8]
 
 
 23
 However, this is not an absolute rule and it cannot be said as a matter of law that a policeman can never be liable for the actions of a suspect, although cases in which liability is imposed will be relatively rare. As detailed earlier in this opinion, an officer might be found liable if a fleeing suspect's conduct is sufficiently predictable and is directly and immediately linked to the officer's conduct and if the officer's decision to pursue or continue to pursue the suspect was unreasonable under the circumstances. See, e.g., Schatz, 395 F.Supp. at 274-75 (when person was injured when his car was struck by a suspect being pursued by the police, liability of pursuing officers was a jury question, but court stated that "[w]here there is likelihood of harm from an intentional or reckless act of an outsider, the actor who creates the situation of danger may be held responsible for the act of the immediate wrongdoer.") (citation omitted); Mason v. Bitton, 85 Wash.2d 321, 534 P.2d 1360, 1363 (1975) (en banc) (when innocent motorists were killed, police officers pursuing suspect may have violated duty to act with due regard for the safety of others even though the police vehicle itself was not involved in an accident).
 
 
 24
 We need not determine whether this is such a case, however, because whether or not the police officers' conduct might be considered actionable under the present status of the law, it was not clearly established in 1986 that this conduct violated the appellant's constitutional rights. Most of the cases that suggest a police officer or municipality might be liable for the actions of a third party have been decided since 1986. See, e.g., Wood, 851 F.2d at 1212 (decided 1988); Nishiyama, 814 F.2d at 277 (decided 1987); Timko, 665 F.Supp. at 1130 (decided 1986). Therefore, we affirm the district court's grant of summary judgment in favor of the officers on qualified immunity grounds.
 
 II. Municipal Liability
 
 25
 The district court also granted summary judgment for the City and County of Denver, denying the appellant's request for declaratory and injunctive relief and compensatory damages. The district court "recognized a right of recovery under section 1983 when a 'failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact,' " but found that "[t]hat case has no application to the [appellant] because none of the [appellee] police officers violated any of his constitutionally protected rights." Dist.Ct.Op. at 3 (citation omitted).
 
 
 26
 However, we have affirmed the summary judgment for the individual officers not on the ground that their conduct did not violate the Constitution but rather on the ground of qualified immunity. In Watson v. City of Kansas City, Kansas, 857 F.2d 690 (10th Cir.1988), we noted that
 
 
 27
 there is no inherent inconsistency in allowing a suit alleging an unconstitutional policy or custom to proceed against the city when the individuals charged with executing the challenged policy ... have been relieved from individual liability. While it would be improper to allow a suit to proceed against the city if it was determined that the officers' action did not amount to a constitutional violation, there is nothing anomalous about allowing such a suit to proceed when immunity shields the individual defendants. The availability of qualified immunity does not depend on whether a constitutional violation has occurred. While a government official who violates the constitution will be protected if his or her actions were reasonable in light of clearly established law and the information the official possessed when he or she acted, municipalities enjoy no such shield.
 
 
 28
 Id. at 697 (citations omitted). Accordingly, we must now consider whether the municipality's motion for summary judgment should be granted.
 
 
 29
 In his complaint, the appellant sought relief to "redress [the municipality's] grossly negligent or reckless or consciously disregarding or deliberately indifferent failures ... to develop, implement and train staff in reasonably federally constitutionally required hot pursuit high speed chase policies and procedures...." Complaint, Rec., vol. I., doc. 1, at 10. In so doing, the appellant alleged that the City and County of Denver failed to train its officers properly and to develop "adequate and reasonable policies and guidelines" for high speed chases. Id. at 8-10.
 
 
 30
 We are not bound by the district court's decision to accept these allegations of the complaint as true. See Dist.Ct.Op. at 1. We review summary judgment orders de novo and may affirm the district court's order on any grounds adequately presented below. See Griess, 841 F.2d at 1047. Both parties in this case fully presented their positions on the summary judgment motion before the district court ruled on it. Neither side asked for an extension of time to present further information. Thus, we can review the record ourselves to see if the summary judgment order may be upheld on other grounds. We believe that it can.
 
 
 31
 "[T]o survive summary judgment, the plaintiff must go beyond [his] pleadings and show that [ ]he has evidence of specific facts that demonstrate that" the City and County of Denver exhibited deliberate indifference towards him in its alleged failure to institute a proper policy and in not properly training and supervising its officers. Watson, 857 F.2d at 694; see also City of Canton, 489 U.S. at 388-92, 109 S.Ct. at 1204-07. The appellant did not meet this burden, and indeed evidence in the record shows to the contrary.
 
 
 32
 The appellant's evidence consisted of documented incidents of bystander fatalities and injuries allegedly caused by police chases and the affidavit of Richard Zevitz, the author of a publication on police civil liability and high speed pursuit. Zevitz stated that "[b]ecause of its gross and glaring inadequacies, ... the Denver Police Department pursuit policy in effect on September 23, 1986, with deliberate indifference and reckless disregard to public safety, falls well below the standard generally employed by most modern police agencies."
 
 
 33
 For purposes of defeating the summary judgment motion, the appellant's evidence was inadequate as a matter of law. The appellant made only a conclusory statement that the Denver Police Department's policy was characterized by the requisite deliberate indifference and reckless disregard, and the appellant presented no evidence to that effect. The appellant's evidence, at most, presented a case only for negligence or gross negligence. As we pointed out supra, negligence and gross negligence do not give rise to section 1983 liability.
 
 
 34
 Several undisputed facts in the record establish that the municipality was concerned with public safety during police chases. First, the police chase policy in effect on September 23, 1986, specifically stated that "[a]ll precautions will be taken with regard to the safety of the public," and the policy requires close monitoring and supervisor approval before a chase can be continued. Second, the dispatcher attempted to stop the chase with a command order to do so, even though the police officers did not immediately cease chasing the suspect and the accident occurred a few seconds later. Finally, the Denver Police Department had a defensive emergency vehicle operations course and training policy. These precautions are inconsistent with a policy of deliberate indifference. Although this evidence, by itself, might not warrant summary judgment for the defendants if the appellant had presented evidence to the contrary, as we have noted above, the appellant presented no evidence, other than conclusionary allegations, that the Denver Police Department had a policy or custom of being deliberately indifferent to bystander safety during high speed chases.
 
 
 35
 Accordingly, we affirm the district court's grant of summary judgment in favor of the City and County of Denver on the ground that the appellant did not establish that the city and county exhibited deliberate indifference to innocent bystanders by failing to institute an adequate pursuit policy or by failing to train and supervise its officers properly. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 CONCLUSION
 
 36
 For the reasons stated above, we AFFIRM the district court's order granting summary judgment in favor of the police officers on the alternative ground of qualified immunity. We AFFIRM the district court's order granting summary judgment in favor of the City and County of Denver on the alternative ground that the appellant did not produce any evidence that the city and county had a policy or practice that amounted to a deliberate indifference to innocent bystanders.
 
 
 
 [1]
 "[W]e are 'free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.' " Griess v. Colorado, 841 F.2d 1042, 1047 (10th Cir.1988) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987))
 
 
 [2]
 42 U.S.C. § 1983 provides, in relevant part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [3]
 The district court believed that the appellant sought to allege a Fourth Amendment claim as well, and, accordingly, it considered Fourth Amendment law in its decision. However, on appeal the appellant's attorney stated that the appellant's claim was based only on the Fourteenth Amendment. Additionally, the appellees agree that the appellant "assert[ed] Fourteenth Amendment rights, as opposed to Fourth Amendment rights...." Answer Brief of Appellees at 7. Because Brower v. County of Inyo, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), addresses only the Fourth Amendment, it is not controlling in this case
 
 
 [4]
 In Archuleta, the plaintiff was a small child who witnessed what was alleged to have been a violent and unconstitutional arrest of his father. Id. at 496. We upheld the dismissal of the plaintiff's claim only because there was no showing that the officers had acted recklessly toward that plaintiff. Id. at 500. We had no occasion in that case to consider whether reckless conduct toward a well-defined group of potential victims could be considered directed toward each member within the group because there the officers had clearly identified and focused upon the plaintiff during the arrest
 
 
 [5]
 We distinguish DeShaney v. Winnebago County Social Services Department, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In DeShaney, a county social services department received complaints that a father was severely beating his child, but failed to remove the child from his father's custody. As a result of a subsequent beating by the father, the child suffered permanent brain damage. The Supreme Court held that the department's failure to provide the child with adequate protection did not violate his rights under the due process clause. Id. at 202, 109 S.Ct. at 1007
 DeShaney stands for the proposition that the state cannot be held liable for failing to act affirmatively to protect its citizens from private violence or other mishaps not attributable to the conduct of its employees. Accord Hilliard v. City and County of Denver, 930 F.2d 1516, 1520-21 (10th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 656, 116 L.Ed.2d 748 (1991). The Court emphasized that the state did not create the danger that eventually injured the child; it simply failed to intervene in the status quo. DeShaney, 489 U.S. at 201, 109 S.Ct. at 1006. In the case at hand, however, the appellant alleges that the state affirmatively and directly changed the status quo on September 23, 1986, by pursuing an allegedly unconstitutional chase. DeShaney is therefore inapplicable.
 
 
 [6]
 See, e.g., White v. Rochford, 592 F.2d 381, 385 (7th Cir.1979) (officials "may be held liable for 'gross negligence' or 'reckless disregard' for the safety of others"); Schatz v. Cutler, 395 F.Supp. 271, 274 (D.Vt.1975) ("[T]he operator of an emergency vehicle in fresh pursuit ... is called upon to drive with due care under the circumstances and is not protected 'from the consequences of his reckless disregard for the safety of others.' ") (citations omitted)
 
 
 [7]
 For a review of the cases addressing section 1983 liability in this situation, see Joel E. Smith, Annotation, Liability of Governmental Unit or Its Officers for Injury to Innocent Occupant of Moving Vehicle, or for Damage to Such Vehicle, as Result of Police Chase, 4 A.L.R.4th 865 (1981 & Supp.1991); Joel E. Smith, Annotation, Liability of Governmental Unit or Its Officers for Injury to Innocent Pedestrian or Occupant of Parked Vehicle, or for Damage to Such Vehicle, as Result of Police Chase, 100 A.L.R.3d 815 (1980 & Supp.1991); Annotation, Liability of Governmental Unit or Its Officer for Injury or Damage from Operation of Vehicle Pursued by Police, 83 A.L.R.2d 452 (1962 & Supp.1991)
 
 
 [8]
 See, e.g., Hughes v. City of Fort Collins, 926 F.2d 986, 987-88, 990 (10th Cir.1991) (city, police officers, and district attorneys not liable to victim's survivors under section 1983 because they failed to solve a murder and apprehend the perpetrator before he killed again; alleging municipal liability is very close to a Rule 11 violation)