Donald GEE, Plaintiff,

v.

Ron RUETTGERS, and Duane Shillinger, Defendants.

No. 93–CV–152–J.

United States District Court,
D. Wyoming.

Nov. 15, 1994.

Donald Gee, pro se.

Terry L. Armitage, Asst. Atty. Gen., Kimberly A. Baker, Cheyenne, WY, for defendants.

### DECISION REVIEWING REPORT AND RECOMMENDATION; AND DENYING, IN PART, AND GRANTING, IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

This matter comes before the Court for review of the Magistrate Judge's Report and Recommendation Dismissing plaintiff's civil rights complaint and Plaintiff's Objection to the Report and Recommendation.

Plaintiff, an inmate in the Wyoming State Penitentiary, filed his Amended Complaint pursuant to 42 U.S.C. § 1983, alleging defendants, the Warden and an Associate Warden, violated his First Amendment and Due Process rights. Plaintiff contends that defendants violated his First Amendment Rights by unlawfully interfering with and censoring his mail. Defendant also contends his due process rights were violated when he was disciplined by an allegedly biased Disciplinary Committee.

Defendants moved for summary judgment dismissing the Amended Complaint on the grounds that they have qualified immunity and that all of their actions were well within the discretionary authority given to prison officials.

Plaintiff responded by moving for partial Summary Judgment on the issue of defendants' liability.

Pursuant to our Local Rules, the Magistrate reviewed the plaintiff's complaint and all other material on file and issued a recommendation of denial of plaintiff's motion, grant of defendant's motion and dismissal of the Complaint. U.S.D.C.L.R. 73(d); See also 28 U.S.C. § 636(b)(1)(B).

The plaintiff filed an objection to the proposed findings and recommendation of the Magistrate Judge on August 10, 1994. Therefore, the Court subjects the recommendation of the Magistrate to a de novo review. Gee v. Estes, 829 F.2d 1005, 1009 (10th Cir. 1987).

The Court has made a de novo review of the matter, has carefully reviewed the complaint, and all material on file, and upon its own review of the applicable statutes and authorities is fully advised in the premises.

The Magistrate Judge correctly stated the well-known standards for grant or denial of summary judgment, as well as the case law applicable to assertions of the qualified im-

munity defense. Plaintiff has no objection to these matters and therefore the court need not repeat these standards and authorities. Similarly, Plaintiff has no Objection to the Magistrate Judge's conclusion that the standard announced in *Procunier v. Martinez,* is applicable to this case. 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (setting standards for permissible limitations on prisoner's First Amendment rights in context of challenge to prison mail censorship regulations) *overruled in part* [1] *by Thornburgh v. Abbott,* 490 U.S. 401, 413–14, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989).

Plaintiff objects to the Magistrate Judge's Report and Recommendation for four reasons. One, he contends that under *Martinez, supra,* prison officials may not censor personal mail simply to eliminate factually inaccurate statements. *Id.* 416 U.S. at 413, 94 S.Ct. at 1811. Two, he contends that the Magistrate Judge erred in finding that he had not pleaded specific facts in support of his allegation that defendants interfered with other letters to his family and with his "legal mail." Three, plaintiff contends that the Magistrate Judge erred in concluding that the rules and regulations contained in the Inmate Handbook are not unconstitutionally vague. Four, he contends that the Magistrate Judge erred in concluding that plaintiff had not supported his claim that the disciplinary committee against him was biased.

Plaintiff contends that the Magistrate Judge erroneously applied *Martinez* to allow defendants to use prison regulations as a basis to censor his mail simply to eliminate factually inaccurate statements.

The Wyoming State Penitentiary's Inmate Rules Handbook has a general regulation prohibiting "[p]roviding false information to any official, court, news media, penitentiary employee, or the general public" as an offense which poses a "threat to the security and order of the institution." Handbook, Chapter XXX (*"Prohibited Conduct for Inmates "*), § 2 ¶ 27.

The Handbook also contains six pages of regulations about inmate mail. Handbook, Ch. XIII (*"Mail Privileges "*). Nowhere in the regulations that specifically address inmate mail does it provide that making false statements is grounds for censoring outgoing mail. Instead, the mail rules state outgoing general mail will be "held back" if it: "(a) Contains contraband; (b) Advocates any act contrary to the law; (c) Directly threatens the security, safety, or order of the penitentiary or its personnel . . .; (d) Contains coded or otherwise undecipherable language that prevents adequate review of the material; or (e) Is not covered by sufficient postage." Handbook, Chapter XIII, § C(5).

Under the Handbook, mail privileges are also subject to abridgment "if such correspondence violates the rules and regulations of the prison and if the security, order, and rehabilitative objectives of the prison are threatened by your correspondence." Handbook, Ch. XIII, § 6 (*"Content of Mail "*).

On April 29, 1991, plaintiff wrote a letter to his brother [2] making allegations about the conditions of his confinement, alleging retaliatory action by prison officials and stating he might die due to stoppage of his medication and dehydration. Prison officials routinely scan outgoing mail and detected the allegations. The letter was confiscated. Defendant was charged with violating Chapter XXX, § 2, ¶ 27 of the handbook by providing false information to the general public. He was found guilty of the charge and disciplined.

■ Under *Martinez,* limitations on the First Amendment's freedoms caused by regulations concerning an inmate's outgoing mail must be no greater than that necessary to protect the particular government interest involved. 416 U.S. at 413, 94 S.Ct. at 1811. To determine if the challenged regulation or

---

1. In *Thornburgh,* the court overruled *Martinez* only to the extent that it could be read to require different standards for incoming mail from prisoners and incoming mail from nonprisoners. 490 U.S. at 413–14, 109 S.Ct. at 1881–82. However, as noted in *Thornburgh,* the central focus of *Martinez* was regulations concerning outgoing

correspondence, a category of communications for which the standard was not overruled. *Id.*

2. The letter is addressed to plaintiff's brother, but plaintiff's pleadings allege that he intended that his brother would read the letter to their mother, who cannot read English.

practice meets this test, this court must identify first, the First Amendment freedom at issue, and second, the particular governmental interest involved.

The First Amendment freedom at issue was identified in *Martinez*. The inmate who sends a letter and the addressee of such direct personal correspondence derive "from the First and Fourteenth Amendments a protection against unjustified governmental interference with the intended communication." *Id.* at 410, 94 S.Ct. at 1810.

The materials submitted by defendants in support of their motion for summary judgment do not specify the substantial governmental interest that they contend is furthered by such censoring of allegedly untruthful communications by an inmate to a member of his family. The Handbook does classify the conduct prohibited under § 2, including ¶ 27, as Class II offenses. The Handbook states: "Class II offenses are those offenses which pose a threat to the security and order of the institution." Ch. XXX, § 2. However, the record on summary judgment does not contain an explanation of how plaintiff's allegedly untruthful statements mailed to a family member outside of the institution threaten the "security and order of the institution."

The Hearing Record[3] of the disciplinary committee's action, states that the committee concluded that defendant's "purpose and intent" was to incite others via the statement asking his brother to seek revenge and contact the U.S. Attorney General Civil Rights Division if plaintiff "comes up dead." The committee also objected to plaintiff's statement in the letter asking his brother not to tell their mother what he was alleging about his condition. The committee found and concluded that plaintiff's "letter, taken as a whole, is considered by this committee to contain two (2) serious[4] lies intended to cre-

ate a threat to the good order, discipline and security of this institution."

■ As was the case in *Martinez*, defendants in this case do not show how statements directed *outside* of the prison, can undermine or pose a threat to order, discipline and security inside of the institution. Similarly, defendants do not specify what contribution the suppression of false statements by an inmate to his family about the motives or conduct[5] of prison officials may make to the rehabilitation of criminals. Therefore, it is simply not possible to determine if the restriction of Ch. XXX, § 2, ¶ 27, as applied as a basis for censoring an inmate's outgoing mail, limits First Amendment freedoms no more than necessary to protect that interest.

The Magistrate Judge found that Ch. XXX, § 2, ¶ 27 as applied, "and related provisions" further "the important government interests in maintaining order in prison, preventing criminal activity, aids in rehabilitating inmates, and limits First Amendment freedoms no more than necessary to protect that interest." Respectfully, this court must disagree because the record on cross motions for summary judgment does not show *how* the regulations as used to censor outgoing mail further such governmental interests. As the Supreme Court noted in *Thornburgh*, a different standard is applicable to regulations effecting outgoing inmate mail because the "implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implication of incoming materials." 490 U.S. at 413, 109 S.Ct. at 1881–82.

■ The discretion afforded prison officials is great. Nonetheless, they must show how the regulation or practice used as a basis for censoring plaintiff's outgoing mail "fur-

---

3. A copy of the Hearing Record was submitted by plaintiff in response to this court's Order that he show he has exhausted administrative remedies.

4. The two statements designated "serious lies" appear to be that his medical condition was life-threatening and that prison officials planted contraband in his cell.

5. In the letter, plaintiff alleged that prison officials withheld his medication, ignored his alleged "desperate need for medical attention", planted contraband in his cell, and wanted him dead because of a then-pending lawsuit against the prison. The Disciplinary Committee heard evidence from prison medical personnel and plaintiff's own witness and found these statements to be false.

thers an important or substantial governmental interest unrelated to the suppression of expression." *Martinez,* 416 U.S. at 413, 94 S.Ct. at 1811. It is not enough to simply recite the important government objectives of "security, order and rehabilitation." Once suppression of the communication is established, defendants must make a showing of *how* the communication directed outside the prison threatens "security and order" in the penitentiary in order to show they have not violated a right clearly established at the time of their action. *See e.g. Thornburgh,* 490 U.S. at 411, 109 S.Ct. at 1880 (1989) ("Certainly, *Martinez* required a close fit between the challenged regulation and the interest it purported to serve.").

The test announced in *Martinez* has been the accepted rule for analysis of regulations or practices censoring inmates' *out*going mail since 1974. Later Supreme Court cases announced a lesser standard for correspondence coming into the prison from other prisoners,[6] and for regulating publications that come into a prison. *Thornburgh, supra* (reasonableness standard applied in upholding facial validity of Federal Bureau of Prisons' regulations allowing Wardens to restrict publications entering prison). Nonetheless, the Supreme Court has reaffirmed that the standard announced in *Martinez* continues to be applicable to the issue of the standard for censorship of an inmate's outgoing mail. *Thornburgh,* 490 U.S. at 412–13, 109 S.Ct. at 1881–82.

 For the purposes of opposing defendants' motion for summary judgment, plaintiff has raised a factual issue on whether defendants censored his outgoing correspondence "simply to eliminate unflattering, or unwelcome opinions or factually inaccurate statements" in violation of clearly established rights as announced in *Martinez.* Whether "an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, . . . assessed in light of the legal rules that

were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The law is "clearly established" at the time the action was taken if there is a Supreme Court decision directly on point. *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992). Therefore, because the law was clearly established at the time defendants censored the April 29, 1991 letter and because defendants have not shown that Ch. XXX, § 2, ¶ 27, as applied to censor plaintiff's outgoing mail, did not violate that clearly established law, the court must deny defendants' Motion for summary judgment based on the defense of qualified immunity involving the censorship of the April 29, 1991, letter to his brother.

 In his next basis for objection, plaintiff contends that the Magistrate Judge erred in finding that he had not pleaded specific facts in support of his allegation that defendants interfered with other letters and with his "legal mail."

Defendants' affidavits establish that plaintiff's privileged mail was only opened "inadvertently" and was not read. The affidavits state that prisoner's privileged mail was only returned to its sender during the time the plaintiff was absent from the Wyoming State Penitentiary because he was in a federal institution in Illinois. The affidavits also state that plaintiff's mail has been inspected in accordance with the mail regulations and that defendants have not interfered with his mail.

In opposition to these affidavits, plaintiff's affidavit stated that he would obtain affidavits from family members supporting his allegations that plaintiff's mail has been interfered with and that as a result, his family has received mail from him consisting of only "empty envelopes." However, there are no such affidavits in the file.

Therefore, the Magistrate Judge correctly found that plaintiff did not raise an issue of

---

**6.** *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987) (applying "reasonably related to legitimate penological interests" standard in challenge to prison regula-

tions restricting correspondence between family members who are *inmates at different institutions* and invalidating regulation concerning marital privilege).

material fact on his claim that defendants impermissibly interfered with either his "privileged" mail or his mail to his family. Accordingly, plaintiff's objection will be overruled and defendants will be granted summary judgment on this issue.

Plaintiff contends that the Magistrate Judge erred in concluding that the rules and regulations in the Handbook are not impermissibly vague.

■ Upon de novo review, this court agrees with the Magistrate Judge that the six pages of rules dealing explicitly with mail, including privileged mail, are clearly tailored to meet legitimate governmental interests and do not limit First Amendment freedoms more than is necessary to protect those legitimate purposes. The rules dealing with "privileged" mail are particularly well developed to ensure that mail can be adequately screened for the security risk posed by contraband, while at the same time, ensuring the privileged communications remain confidential.

Accordingly, defendants are entitled to summary judgment declaring that the mail regulations contained in Ch. XIII of the Handbook are not unconstitutionally vague.

■ There is a closer question on the general regulation prohibiting providing "false information to any official, court, news media, penitentiary employee, or the general public." Handbook, Ch. III, § 2, ¶ 27.

A law is void on its face if it is so vague that persons of "of common intelligence must necessarily guess at its meaning and differ as to application." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Although the vagueness doctrine focuses both on actual notice to citizens and arbitrary enforcement, the Supreme Court has recognized that the more important aspect of the doctrine is the establishment of minimal guidelines for law enforcement officials. Justice O'Conner wrote: "Our concern here is based upon the 'potential for arbitrarily suppressing First Amendment liberties....'" *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903 (1983).

Government counsel incorrectly argues that the vagueness doctrine only applies to criminal statutes or ordinances in its reply brief. But the Supreme Court has often applied a vagueness test in its analysis of civil cases.

*Baraldini v. Meese,* 691 F.Supp. 432, 440 (D.D.C.1988) (citations partially omitted) (holding Federal Bureau of Prisons' criteria for assigning women to high security unit violated inmates' First Amendment rights).

As a general regulation, Ch. III, § 2 ¶ 27 does not appear to be unconstitutionally vague. However, when it is applied as a basis for censoring outgoing mail to a prisoner's immediate family, persons "of common intelligence must necessarily guess at its meaning and differ as to application." Paragraph 27 is not part of the very specific and seemingly inclusive mail regulations. In view of the fact that elsewhere in the regulations it is specified when "family members, relatives and friends" are meant, a person of ordinary intelligence would not assume that the term "general public" included "family members." See Ch. XIII, § 2(E)(2) ("Family members, relatives, and friends may also subscribe to publications for you"). Thus, because a person of ordinary intelligence would not necessarily guess that "general public" includes members of his immediate family, the court must deny defendant's motion for summary judgment on the issue of the alleged vagueness of Ch. XXX, § 2, ¶ 27, as applied as a basis for censoring outgoing mail to an inmate's immediate family.

■ As for plaintiff's claim that he did not get a "fair" hearing before the disciplinary committee, such disciplinary actions are not subject to judicial review in the absence of arbitrary or capricious actions. *Rivera v. Toft,* 477 F.2d 534, 536 (10th Cir.1973) (actions of prison officials in disciplining inmates not subject to judicial review in absence of arbitrariness or caprice). Plaintiff's pleadings and papers do not establish an allegation that these two individual defendants acted arbitrarily or capriciously in connection with the prison disciplinary committee. In fact, plaintiff does not allege that the two defendants were present at the hearing. Instead,

defendant Schillinger's affidavit establishes that as warden he conducted his own review of the evidence, found that committee reached the proper conclusion based upon the evidence, and affirmed the finding that plaintiff was guilty of the charge. Defendants' affidavits also establish that it is not unusual for a disciplinary committee to include members who have participated in other disciplinary actions against the same inmate.

Plaintiff has not met his burden of establishing a material issue of fact in support of his allegations that defendants are responsible for alleged bias on the part of the Disciplinary Committee.

In conclusion, the court will reject the Magistrate Judge's Report and Recommendation, in part, as stated above. The court will affirm the Report and Recommendation in all other respects.

The court will deny plaintiff's Motion for partial summary judgment. The court will grant defendant's Motion for Summary Judgment and dismiss the contentions that the mail regulations are void for vagueness and that the defendants interfered with his mail except for the April 29, 1991 letter.

In other respects, the court will deny defendants Motion for Summary Judgment. This leaves for trial the following issues:

Whether defendants violated plaintiff's First Amendment rights by censoring his April 29, 1991 letter simply to eliminate inaccurate statements.

Whether the regulation contained in the Handbook at Ch. XXX, § 2, ¶ 27 as applied as a basis for censoring mail to an inmate's immediate family is unconstitutionally vague.