UNITED STATES COURT OF APPEALS
**Filed 2/29/96**
TENTH CIRCUIT

AUBREY MCINTOSH, individually and
as the Personal Representative of the
Estate of Dierdre McIntosh, deceased,

        Plaintiff - Appellant,

  and

KATHLEEN O'CONNOR, as an
involuntary party plaintiff,

        Plaintiff,

     v.

CITY AND COUNTY OF DENVER;
DAVID MICHAUD, Denver Chief of
Police; K. D. JACKSON, Denver Police
Officer; S. T. SICH, Denver Police
Officer; BUTCH MONTOYA, Denver
Department of Public Safety Manager,

        Defendants - Appellees.

No. 95-1346

(D.C. No. 94-M-2166)

(D. Colo.)

ORDER AND JUDGMENT[*]

Before SEYMOUR, Chief Judge, McKAY and LUCERO, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff Aubrey McIntosh, proceeding in this court pro se, appeals from the district court's grant of summary judgment for the Defendants in this 42 U.S.C. § 1983 lawsuit. Mr. McIntosh alleged that his daughter's equal protection and due process rights were violated when the Denver police, Defendants in this action, failed to protect her from her abusive boyfriend. The district court held that no constitutional violations occurred. For the reasons that follow we affirm with respect to the due process claims but reverse and remand for further discovery with respect to Mr. McIntosh's equal protection claim.

Mr. McIntosh's daughter, Dierdre, was romantically involved with a physically abusive man, Paul Dugas. On May 11, 1992, Mr. Dugas severely beat Ms. McIntosh. Denver police investigated the incident. Pursuant to the City and County's domestic violence policy, the police obtained a warrant for Mr. Dugas's arrest. They attempted to locate Mr. Dugas but could not find him. The police did not notify other jurisdictions, including other states, of the arrest warrant. Sometime after the May 1992 incident, Mr.

2

Dugas and Ms. McIntosh left for Texas. Mr. Dugas was arrested twice for theft. Then, on September 22, 1992, Mr. Dugas shot and killed Ms. McIntosh. The Denver warrant was still outstanding.

In his complaint, Mr. McIntosh alleged that substantive due process required the Defendants to protect Ms. McIntosh from domestic violence, that the Denver domestic violence policy manual created procedural due process rights for his daughter's protection, and that the Defendants violated Ms. McIntosh's equal protection rights because they did not pursue domestic violence cases with the same vigor as other types of assaults. The Defendants filed for summary judgment, asserting qualified immunity. Additionally, they requested the district court to stay discovery until the qualified immunity issue was resolved. The district court entered an order staying discovery and subsequently granted summary judgment for the Defendants.

Generally, the substantive due process clause of the Fourteenth Amendment does not create an affirmative duty on the state to protect its citizens from violence. DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 197 (1989). This rule may not apply, however, where the state "affirmatively and directly changed the status quo." Medina v. City and County of Denver, 960 F.2d 1493, 1497 n.5 (10th Cir. 1992). Mr. McIntosh has simply failed to allege any facts which indicate that the Defendants

3

somehow changed the status quo. Thus, Mr. McIntosh's substantive due process claim fails.

Mr. McIntosh also has failed to point to any language in the Denver domestic violence policy manual which would create a procedural due process right in the context of this case. As the district court pointed out,

> [t]he Denver domestic violence policy does not mandate affirmative action by the police other than the issuance of an arrest warrant upon a finding of probable cause. It does not direct any particular procedures to execute the warrant. The police have discretion in conducting their investigation and pursuing apprehension of the accused. They are left to their professional judgment as to what measures are appropriate.

R., vol. I, No. 45, at 6. Thus, Mr. McIntosh's procedural due process claim fails as well.

Finally, Mr. McIntosh argues that his daughter's equal protection rights were violated. Although the state has no general constitutional duty to protect its citizens from violence, the state violates the equal protection clause if it selectively denies its protective services to disfavored minorities. DeShaney, 489 U.S. at 197 n.3; see Watson v. City of Kansas City, 857 F.2d 690, 694 (10th Cir. 1988). Specifically, the state violates the equal protection clause if it provides less protection for domestic violence victims than it does for other assault victims. Watson, 857 F.2d at 694. A plaintiff must show, however, evidence of a policy or practice of such discrimination. It is not enough to show evidence of the plaintiff's own circumstances. Id. at 694-95. Here, the district court held that Mr.

4

McIntosh's claim failed because he "presented no evidence, either statistical or anecdotal, that the Denver Police Department treated female victims of domestic abuse differently from other assault victims." R., vol. I, No. 45, at 3. Mr. McIntosh could not present any such evidence, however, because the district court had stayed discovery. He had no opportunity whatsoever to discover facts crucial to his case.

When a defendant asserts qualified immunity, the district court should stay discovery until the immunity issue is resolved. Workman v. Jordan, 958 F.2d 332, 336 (10th Cir. 1992). In some instances, however, "discovery may be necessary before a motion for summary judgment on qualified immunity grounds can be resolved." Id. If discovery is allowed, it should be "tailored specifically to the immunity question." Id. Here, discovery was necessary to decide Mr. McIntosh's equal protection claim. If Mr. McIntosh can produce statistical or anecdotal evidence consistent with the evidence produced in Watson, then the Defendants are not entitled to qualified immunity and their motion for summary judgment should be denied. If he fails to produce such evidence, then the Defendants are entitled to summary judgment. Thus, we remand to the district court with instructions to allow Mr. McIntosh to conduct discovery limited to his equal protection claim. Nothing herein implies that the district court may not impose reasonable limitations on the manner and scope of discovery.

5

For the foregoing reasons, we AFFIRM in part, and REVERSE and REMAND in part.

Entered for the Court

Monroe G. McKay
Circuit Judge