**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 7 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

NINA KIRK, EUGENE KIRK,

      Plaintiffs - Appellants,

v.

CITY OF McALESTER, a Political Sub-
Division,

      Defendant - Appellee.

No. 00-7073
(D.C. No. 97-CV-164-B)
(Eastern District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY** and **LUCERO**, Circuit Judges, and **McWILLIAMS**, Senior Circuit
Judge.

On August 19, 1996, John Watkins, a captain in the Police Department of the City

of McAlester, Oklahoma ("City") and the commander of its special response team

("SRT"), in executing a no-knock search warrant issued by a state judge, threw a

"distraction device" known as Deftec No. 25[1] through a bedroom window (breaking the

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[1] Deftec No. 25 is manufactured by Defense Technology of America, and is
designed to produce smoke and a white flash, and be non-lethal in so doing. Its intended
purpose is to "divert" the attention of the persons in the house to be searched so that a

window) of the residence of Eugene and Nina Kirk. The device landed on a bed, which had been placed directly under the window, and started a fire which burned the Kirks, who were in the bed. Based on that incident, the Kirks filed separate civil rights actions, which actions were later consolidated, in the Eastern District of Oklahoma based on 42 U.S.C. § 1983, naming as defendants the City, Watkins and several others. In the complaint as a first cause of action, the Kirks alleged that the City had failed to properly train its agents and had evidenced "deliberate indifference" to their constitutional rights in violation of 42 U.S.C. § 1983.[2] By answer, the City denied that it had failed to properly train its police officers and asserted that the training of its officers was proper and appropriate.

Thereafter, the City, and Watkins, filed separate motions to dismiss and for summary judgment. The district court denied Watkins' motion for summary judgment and he took an immediate appeal from that order. On appeal, this court in an unpublished opinion reversed the district court and remanded the case to the district court with directions that it grant Watkins' motion for summary judgment and enter judgment in favor of Watkins on the basis of qualified immunity. *Kirk v. Watkins,* 182 F.3d 932, 1999 WL 381119 (10th Cir. June 11, 1999). (The City was not a party to that appeal.) After

---

safe entry can be made.

[2]In their brief in this court, the Kirks assert that "the flash bang device was thrown into the bedroom of the Kirks without ascertaining whether the area was clear or visualizing the area where the device was going to be thrown."

remand, the district court complied with our directions and entered summary judgment in favor of Watkins and dismissed the Kirks' claim against Watkins.

Upon remand, the City renewed its previously filed motion to dismiss or for summary judgment. Believing that the motion for summary judgment was more appropriate than the motion to dismiss, the district court granted the City's motion for summary judgment, holding, *inter alia,* that the Kirks had failed to show that any failure to properly train on the part of the City amounted to "deliberate indifference." The Kirks appeal the order and judgment in favor of the City. (The Kirks and the City are the only parties to this appeal.)

On appeal, the basic issue, as we see it, is whether the Kirks' claim against the City based on "failure to train" was ripe for summary judgment in favor of the City, or was summary judgment premature, requiring submission of the issue to a jury.

The background facts are set forth in our earlier unpublished order and judgment in *Kirk v. Watkins,* 182 F.3d 932, 1999 WL 381119 (10th Cir. June 11, 1999). The warrant in question was by its terms to be executed in daylight hours. The affidavit in support of the application for the warrant indicated Eugene Kirk kept drugs and drug paraphernalia on the premises, had a reputation for violence and, on occasion, had stated that if the police came back into his house again, "they would not leave the same way they entered." The warrant was executed about 6:00 a.m. on August 20, 1996. Drug paraphernalia and firearms were found in the search of the Kirks' residence, for which

Eugene Kirk was prosecuted in state court. (Nina Kirk was not the subject of any criminal action growing out of the search.)

From the present record, we learn that the City has a city manager form of government. It would appear that the policies and procedures of the City's police department are vested in the Chief of Police, one Dale Nave. It is fair to say, as the district court found, that based on the evidentiary matter before the district court in connection with the City's motion for summary judgment, the police chief had "delegated the functions of the Special Response Team to Watkins." Captain Watkins, and several others assigned to the SRT, had previously been trained in the use of the Deftec No. 25 by the Oklahoma Department of Corrections, the Police Academy for the City of Tulsa and the Oklahoma Council on Law Enforcement Education and Training. For some time prior to the no-knock search of the Kirks' residence, the SRT, led by Watkins, had been studying and planning on the best technique to accomplish such search and determined to use Deftec No. 25 as a diversionary device in their search of the premises. In connection therewith, Watkins obtained, and was using, aerial photographs and a floor plan of the Kirks' residence. They had been informed by a confidential informant that the bed in the room where the Deftec No. 25 was later thrown by Captain Watkins was against an inside wall and was not directly below the window. Although Watkins had never before used Deftec No. 25 in the execution of a search warrant, his training, and the experience of the SRT, was that the Deftec No. 25 was "safe" and would not cause burns. Such is, in brief,

a summary of the procedure taken by the SRT in anticipation of the no-knock search of the Kirks' residence.

In granting the City's motion for summary judgment on the Kirks' "failure to train" claim, the district court spoke as follows:

> In the specific context of a failure to train claim, the "inadequacy of policy training may serve as a basis for § 1983 liability, only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the policy come into contact." City of Canton v. Harris, 489 U.S. 378, 389 (1989). Based upon the evidence presented, this Court cannot conclude that the training received by Watkins in the deployment of distraction devices was inadequate such that it amounts to deliberate indifference. The evidence is undisputed that Watkins received training from entities outside of the City on the use of devices similar to the Deftec No. 25 and that his training did not reveal that the device was incendiary. Additionally, while common sense may require that a deploying officer know where he is throwing this device, nothing in the evidence demonstrates that the training Watkins received required visualization of the target was required prior to deployment. As a result, the City may not be held liable that, as a matter of policy, the training received by its officers was inadequate so as to rise to the level of deliberate indifference.

*Kirk v. Watkins,* No. Civ 97-164-B (E.D.Okla. May 11, 2000).

In *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992), the Supreme Court spoke as follows:

> "The city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only when it can be fairly said that the city itself is the wrongdoer."

- 5 -

In this same vein, however, a municipality may be liable for the constitutional torts of its agents causing injury to others because of its failure to properly train its agents or employees under circumstances which show a "deliberate indifference" on the part of the municipality to the risk imposed on others by its failure to properly train its representatives. *See Board of County Comm'rs. v. Brown,* 520 U.S. 397 (1997); *Collins v. City of Harker Heights*, 502 U.S. 115 (1992); *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989); *Monell v. New York City Dep't. of Social Serv.,* 436 U.S. 658 (1978); and *Medina v. City and County of Denver,* 960 F.2d 1493 (10th Cir. 1992). In *Medina* at 1501, we spoke as follows:

> Accordingly, we affirm the district court's grant of summary judgment in favor of the City and County of Denver on the ground that the appellant did not establish that the City and County exhibited deliberate indifference to innocent bystanders by failure to institute an adequate pursuit policy or by failing to train and supervise its officers properly.

As indicated, the district court in the present case granted summary judgment to the City on the ground that the record before him failed to show that the "training received by Watkins in the deployment of distraction devices was inadequate such that it amounts to deliberate indifference." We hold that the present record supports such determination.

As previously stated, we think the basic issue in this appeal is whether the Kirks' claim of a "failure to train" on the part of the City is subject to a motion for summary judgment on the ground that the Kirks failed to make a sufficient showing that the City

- 6 -

exhibited "deliberate indifference." As we understand it, the Kirks have made no claim, as such, that their civil rights were violated by Captain Watkins who, in tossing the Deftec No. 25 into the Kirks' residence without looking, was following the City's "policies, customs or practices," and that the City was therefore liable to them for a violation of their civil rights. *Flanagan v. Munger and the City of Colorado Springs,* 890 F.2d 1557, 1568 (10th Cir. 1989). Such being the case, we are not particularly concerned with the district court's alternative holding that Captain Watkins was not a "final policymaker" and could not, by "single act" or otherwise, create a policy, custom or practice for the City. In this connection, we are not impressed with counsel's suggestion in this court that the City, though it had no policy, custom or practice, is somehow liable to the Kirks for a violation of their civil rights based on Watkins' promulgation, as a final policymaker, of a policy, custom or practice, and his adherence to the policy, custom or practice which he thus promulgated. In this general regard, see our unpublished opinion *Crownover v. City of Lindsay,* 229 F.3d 1162, 2000 WL 1234852 (10th Cir. Sept. 1, 2000), where we upheld a district court's determination "that plaintiff's evidence failed to show that Officer Holloway was a final policymaker for the City with authority to make or change the City's policies." Nor are we persuaded by the further suggestion that our unpublished opinion in *Kirk v. Watkins,* 182 F.3d 932, 1999 WL 381119 (10th Cir. June 11, 1999) precludes summary judgment in the present case in favor of the City on the grounds of failure to show "deliberate indifference" on the part of the City.

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Judge